No. 48,011

STATE OF KANSAS, *Appellant,* v. JANICE K. BOSWELL and LESTER W. DICKERSON, *Appellees.*

(549 P. 2d 919)

Opinion filed May 8, 1976.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Stephen E. Robison,* assistant district attorney, were with him on the brief for the appellant.

*Helen Mountford,* of Leavenworth, argued the cause, and *Stephen J. Blaylock,* of Wichita, was with her on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is an interlocutory appeal by the state (K. S. A. 22-3603) from an order suppressing certain physical evidence (marijuana) taken from suitcases which arrived on an inbound flight at an air terminal in Wichita. The suppression order is based on a determination by the district court that the marijuana was the product of an illegal police search and seizure without a search warrant. This appeal arose in the following manner.

Defendants Janice B. Boswell and Lester W. Dickerson were jointly charged with possession of marijuana for sale (K. S. A. 1975 Supp. 65-4127b [b] [3]). Prior to trial both defendants filed motions to suppress certain evidence on the ground of illegal search and seizure (K. S. A. 22-3216). Following a hearing on the motion the trial court admitted a portion of the evidence but ruled that the remainder had been obtained through an illegal search and was inadmissible under the rules stated in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.

At the hearing conducted before the trial judge, Vernon Oakes, an assistant supervisor for Continental Airlines, testified that at 10:30 p. m. on April 19, 1975, he removed all unclaimed baggage from the baggage claim area, which had accumulated during the day, and transported it to the Continental ticket office. Six of the bags collected by Oakes bore no external markings which identified the owner, except the usual airline baggage claim tags. Oakes testified that airline policy required opening unclaimed baggage without external identification to determine ownership. Pursuant to this policy he opened a brown Samsonite suitcase and discovered a green, opaque plastic bag inside. Oakes removed the green bag from the suitcase and felt the contents. The bag contained three brick-shaped objects. Oakes suspected that marijuana was enclosed in the bag. He testified that he was familiar with ways in which marijuana is packaged for shipment and transported. He had discovered marijuana packed in a similar fashion on one previous occasion. At that time he had discussed with fellow employees in the airline industry methods commonly used to package and transport contraband.

Oakes did not open the green bag; instead he contacted Wichita police officer John Fortner, who was present at the airport in connection with another matter. Fortner was informed of the discovery and he accompanied Oakes back to the Continental ticket

office. Fortner hefted the green bag, observed the way it was packaged and felt its contents. He determined that the bag contained three brick-shaped objects which when pressed with the fingers felt similar to marijuana. Oakes, apparently without request from Fortner, then opened the plastic bag and discovered two white plastic bags. One bag contained two bricks of marijuana wrapped in brown paper, the other contained a quantity of loose marijuana. The contents of this particular suitcase were ruled admissible in evidence by the trial court.

After discovering marijuana in the first suitcase, Fortner asked Oakes whether other unclaimed suitcases had accompanied the Samsonite case on the same inbound flight. Oakes examined the remaining baggage and found three additional suitcases that had baggage claim numbers in numerical sequence with the case containing the contraband. In addition there were other similarities which tied these suitcases to the one previously opened such as similar flight and similar types of suitcases. Oakes opened these three suitcases in the presence of Fortner and discovered twenty brown paper-wrapped marijuana bricks in one, sixteen in another and men's clothing in the third. Fortner took the four suitcases and their contents into custody and delivered them to the Wichita police department.

The following morning at approximately 7:00 o'clock defendants Boswell and Dickerson presented claim tickets for the confiscated luggage to a ticket agent at the Continental booth. Fortner was summoned and Boswell and Dickerson were arrested.

At the suppression hearing the defendants urged that the search of all four pieces of luggage was conducted by Oakes as a private party acting at the direction of and as an agent for the Wichita police department. They argued that the search and seizure by the police did not meet the requirements of any recognized exception to the warrant requirement and therefore constituted a search prohibited by the Fourth Amendment to the United States Constitution and by Section 15 of the Bill of Rights of the Constitution of the State of Kansas. The requirements of these two constitutional provisions are the same. See *State v. Wood,* 190 Kan. 778, 788, 378 P. 2d 536.

At the conclusion of the suppression hearing the district court held that the marijuana discovered by Oakes in the brown suitcase was admissible as evidence. The court held that this initial search was a search by a private party properly conducted by an

airline employee as a part of normal procedure without prior police participation. However, the court suppressed the marijuana discovered in the remaining baggage as fruits of an illegal search by the police without benefit of a search warrant.

Because Officer Fortner proceeded without benefit of a search warrant it was incumbent on the prosecution to show justification for the search. (*State v. Schur*, 217 Kan. 741, 538 P. 2d 689, and *State v. Boster*, 217 Kan. 618, 539 P. 2d 294.)

The theory of the state in this appeal is that the initial search of the first suitcase by the airline employee was a proper search by a private party which is outside the prohibitions of the Fourth Amendment and of Section 15 of the Bill of Rights. This initial search furnished probable cause to search the three additional suitcases and an immediate search without a search warrant was justified because of the mobility of these suitcases which might be claimed and carried away while a search warrant was being obtained, thus the exigent circumstances excused the requirement of a search warrant.

The question is one of first impression in Kansas.

Any discussion of warrantless searches premised upon probable cause and exigent circumstances must begin with *Chambers v. Maroney*, 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, reh. den. 400 U. S. 856, 27 L. Ed. 2d 94, 91 S. Ct. 23. In *Chambers* police officers stopped an automobile and arrested the occupants within an hour after a service station robbery. The car was not searched at the scene of the arrest but was driven to a police station where a warrantless search revealed weapons and other incriminating evidence tying the occupants to the robbery. The Supreme Court found that the station house search of the automobile was valid since the police had probable cause to believe it contained fruits and instrumentalities of the crime, and reasonable because of the distinguishing characteristics of mobility possessed by the property in question, an automobile.

The *Chambers* court, quoting from *Carroll v. United States*, 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, noted that it had previously held that because of their highly movable nature ". . . automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. . . ." (399 U. S. at p. 48.) The court found that the

circumstances of the search in *Chambers* at the station house rather than at the time and place the vehicle was initially stopped did not vitiate the reasonableness of the search. In *Chambers* it is said:

". . . Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (399 U. S. pp. 51-52.)

This court has recognized and applied the principles announced in *Chambers* in two recent cases. In *State v. Morin,* 217 Kan. 646, 538 P. 2d 684, police stopped a vehicle and arrested the driver a short time following a restaurant robbery. The truck that the accused had been driving was transported to a police station where it was searched without a warrant. Money and a wig were discovered beneath the seat of the truck. On appeal defendant challenged the admissibility of this evidence. Citing *Chambers v. Maroney,* supra, this court held the evidence admissible and found that the search was reasonable and justified on the basis of probable cause when considered in light of the characteristic mobility of the vehicle.

In *State v. Taylor,* 217 Kan. 706, 538 P. 2d 1375, this court said that a warrantless, station house automobile search based on probable cause did not run afoul of Fourth Amendment standards. Citing *Chambers* the court noted:

". . . The pickup truck was parked in a public parking lot with open access. The police had probable cause to believe that the vehicle had been used in the commission of a crime and contained valuable evidence relating to that crime. To preserve that evidence it was necessary that the truck be immobilized and protected so none of that evidence would be lost or destroyed. The seizure was clearly legal. See *State v. Hoy,* 199 Kan. 340, 430 P. 2d 275. If the police had probable cause to search the truck at the time it was discovered and defendant arrested, they had probable cause to impound it and search it at a later, more convenient time." (217 Kan. pp. 710-711.)

Although the question has not heretofore been presented in Kansas, the rationale of *Chambers* has been applied in other jurisdictions to uphold as valid warrantless searches of movable containers that police had probable cause to believe contained contraband. ( See *United States v. Valen,* 479 F. 2d 467 [3d Cir. 1973], cert. den. 419 U. S. 901, 42 L. Ed. 2d 147, 95 S. Ct. 185; *State v. Fassler,* 108 Ariz. 586, 503 P. 2d 807; *People v. McKinnon,* 7 Cal. 3d 899, 103 Cal. Rptr. 897, 500 P. 2d 1097, cert. den. 411 U. S. 931, 36 L. Ed. 2d 390, 93 S. Ct. 1891; *State v. Morris,* 329 N. E. 2d 85, 42 Ohio St. 2d 307; *Chaires v. State,* 480 S. W. 2d 196 [Tex. Crim. App. 1972]; and *State v. Wolfe,* 5 Wash. App. 153, 486 P. 2d 1143.)

Before continuing, it should be noted that the conduct of a person acting independently and not under authority or direction of the state is not included in the proscriptions of the Fourth Amendment to the United States Constitution or of Section 15 of the Bill of Rights of the Kansas Constitution, and a search by a private citizen who is not acting as an agent of the state is not prohibited by these constitutional provisions. ( *Burdeau v. McDowell,* 256 U. S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A. L. R. 1159. See also Anno: 36 A. L. R. 3d 553, Private Search—Evidence. )

Several cases have upheld warrantless police searches of baggage with *Chambers* cited as authority. *People v. McKinnon,* supra, presents a situation analogous to that of the present case. The California Supreme Court held that marijuana discovered by an airline freight agent and seized by a narcotics officer was admissible as evidence in a prosecution for drug offenses. In *McKinnon* an air freight agent, suspicious of the contents of five cardboard cartons presented for shipment, opened one carton and discovered brick-shaped packages which contained what he believed to be marijuana. Police officers were summoned by the agent and their inspection of the "bricks" confirmed the agent's suspicions. Officers then located and arrested the defendants who had shipped the cartons. Subsequently the officers opened the remaining four cartons without a warrant and discovered more marijuana. The court applied the holding in *Chambers* and found that the warrantless search of the cartons following defendants' arrest was lawful.

In *People v. McKinnon,* supra, the reasoning is as follows:

"Is a box or trunk consigned to a common carrier for shipment to a remote destination a 'thing readily moved' or a 'fixed piece of property'? The answer, self-evidently, is the former. To be sure, such a box has neither wheels nor motive power; but these features of an automobile are legally relevant only

insofar as they make it movable despite its dimensions. A box, which is a fraction of the size and weight of an automobile, is movable without such appurtenances. It is also true that a box or trunk, as distinguished from an automobile, may serve the double purpose of both storing goods and packaging them for shipment. But whenever such a box is consigned to a common carrier, there can be no doubt that it is intended, in fact, to be moved.

"What is true of a box or trunk is true of all goods or chattels consigned to a common carrier for shipment. As they are no less movable than an automobile, the reasons for the rule permitting a warrantless search of a vehicle upon probable cause are equally applicable to the search of such a chattel. In the language of the United States Supreme Court decisions, 'common sense dictates' that when the police have probable cause to believe a chattel consigned to a common carrier contains contraband, they must be entitled either (1) to search it without a warrant or (2) to 'seize' and hold it until they can obtain a warrant; absent these remedies, the chattel will be shipped out of the jurisdiction or claimed by its owner or by the consignee. *Chambers* teaches us, however, that in those circumstances there is no 'constitutional difference' between the alternatives thus facing the police: an immediate search without a warrant, says the *Chambers* court, is no greater an intrusion on the rights of the owner than immobilization of the chattel until a warrant is obtained, and 'either course is reasonable under the Fourth Amendment.' (399 U.S. at p. 52 [26 L. Ed. 2d at p. 428].)" (7 Cal. 3d, pp. 909, 910.)

Defendants in the present case attempt to distinguish *McKinnon* from the factual circumstances here. They argue that the search of the remaining cartons was made incident to arrest, and that because the cartons were to be shipped out of the airport, an exigency not present in this case existed in *McKinnon*. However, the California court did not justify the search as one incident to arrest. Under the guidelines of *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, a search incident to arrest is limited in scope to the arrestee's person and the area within his immediate control. Clearly the search of cartons in the control of the air freight service in *McKinnon* was not incident to arrest. In addition, the likelihood that the cartons would be shipped out of the jurisdiction in *McKinnon* seems no greater than the chances that the luggage would be claimed and secreted in this case while the officer sought a warrant.

The Arizona Supreme Court applied the *Chambers* rationale to support a warrantless search of containers shipped by air after they arrived at their destination, as in our present case. (See *State v. Fassler*, supra.) In *Fassler* a police officer who had earlier arrested the consignee of two cartons containing marijuana was notified by airline officials that two additional containers had arrived consigned to the arrestee. The officer responded, inspected the containers and

detected the odor of marijuana. He opened the containers and discovered large quantities of the illegal vegetation. Although the consignee had been arrested and the containers were under control of the air freight company, the court held that an officer with probable cause to believe the packages contained contraband was justified in searching without a warrant where there was some threat that the packages might be claimed or returned to the sender. The court noted that the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable, citing *United States v. Rabinowitz.*, 339 U. S. 56, 94 L. Ed. 653, 70 S. Ct. 430.

*State v. Fassler,* supra, was subsequently followed in *State v. Fellows,* 109 Ariz. 454, 511 P. 2d 636.

In *United States v. Valen,* supra (3d Cir. 1973), the validity of an airport baggage search conducted by customs officials was upheld under *Chambers*. An airline employee who thought he detected the aroma of marijuana emanating from two suitcases opened the baggage and found suspicious vegetation. The employee summoned customs agents who also opened the bags and confirmed the suspicion. The court found that the agents had probable cause to search based upon the information obtained from the airline employee. In addition the court noted that the suitcases were mobile, that control over the baggage might be lost and that time would be required to obtain a search warrant. These considerations combined to produce exigent circumstances which justified the warrantless search.

The reasoning behind the rule permitting the search of an automobile without a warrant when there is probable cause to believe the vehicle contains contraband applies to searches of baggage consigned to and shipped by an airline. Thus, if the police have probable cause to believe that baggage consigned to an airline contains contraband, the police are entitled either to search with a warrant or to seize and hold it until they can obtain a warrant. Either course is reasonable under constitutional guidelines. (*United States v. Valen,* supra; *People v. McKinnon,* supra; *State v. Morris,* supra; *Chaires v. State,* supra; and *State v. Wolfe,* supra.)

Reasonable grounds for believing a package contains contraband may be adequately afforded by observing and feeling its shape, its weight, its characteristics and the manner in which it may be carried or packaged. (*People v. McKinnon,* supra; *State v. Fassler,* supra; *United States v. Valen,* supra.)

It should be noted that at least one jurisdiction has refused to extend the *Chambers* doctrine to luggage. In *State v. Matthews,* 216 N. W. 2d 90 (N. D. 1974), the North Dakota court narrowly interpreted and distinguished the *McKinnon* decision in a case involving a bus station search of a package. The North Dakota court held there was no exigent circumstances justifying a warrantless search since the package was under constant surveillance by the police and there was little danger of destruction, removal or concealment. This court is not convinced by the reasoning of the North Dakota court and we decline to follow that court's narrow interpretation of the holding in *McKinnon.*

In this case defendants argue that once Detective Fortner's suspicions were aroused by the information obtained from Oakes and from his own external inspection of the green bag, it was incumbent on him to obtain a warrant before undertaking a search. Defendants contend that the suitcases could have been held immobile and guarded by police until a warrant was obtained. This argument does not comport with the reasoning in *Chambers.* For constitutional purposes there is no difference between seizing and holding movable objects before presenting the probable cause issue to a magistrate in quest of a warrant and, on the other hand, carrying out a search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and Section 15 of the Bill of Rights.

A common carrier, such as an airline to whom goods or baggage has been consigned in sealed packages or suitcases, may open and search the packages and suitcases when such action is reasonably necessary to identify the owners of any baggage which remains unclaimed at the end of the day. It is generally accepted that such searches by a common carrier are reasonable and necessary to detect wrongdoing including insurance frauds and rate cheating. Searches made for protection of the freight and the aircraft, as well as for the safety of the employees and the passengers, have consistently been held proper. (See Anno: Anti-Hijack Measures—Validity, 14 A. L. R. Fed. 286, and Anno: 36 A. L. R. 3d 553, *supra.*)

Accordingly we hold that the search of the first suitcase by the airline employee was a proper search by a private party for the reasonable purpose of identifying the owner of unclaimed baggage. The search was not initiated by the police. The appearance and feel of the contents of the first suitcase furnished probable cause for the policeman who was called to the scene to believe the

contents were contraband and should be unwrapped and seized on the spot. Given the information thus disclosed it was reasonable and probable that the three other suitcases arriving on the same flight, containing consecutive claim numbers and similar in design contained additional contraband. The airline employee testified that at this time, even though the baggage department was closed for the day, if the owner appeared and confronted him with the baggage claim checks he was required to deliver the suitcases to him. Under the circumstances an immediate search of the other three suitcases was justified because of the mobility of the suitcases which could be claimed and carried away while a search warrant was being obtained. Thus, exigent circumstances excused any requirement of first obtaining a search warrant. The search and seizure was proper without a warrant on probable cause because of the movable nature of the suitcases and the circumstances attending the discovery of their probable contents.

The order suppressing the evidence is reversed.