No. 53,986

STATE OF KANSAS, *Appellee,* v. FRANK MIESBAUER, *Appellant.*

(654 P.2d 934)

Opinion filed December 3, 1982.

*Ward P. Ferguson,* of Weelborg, Embers & Ferguson, Chartered, of McPherson, argued the cause and was on the briefs for appellant.

*Tim R. Karstetter,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Frank Miesbauer appeals his jury trial convic-

tion of first degree murder (K.S.A. 21-3401). The victim of the crime was defendant's wife, Ila Miesbauer.

The first issue in whether the trial court erred in refusing to suppress evidence seized at the crime scene. In order to make this issue meaningful, we must set forth in considerable detail the events that led to the discovery of the victim's body.

On April 13, 1981, McPherson County Sheriff, Harris G. Terry, received a telephone call from Shirley Unruh, manager of a McPherson motel. Ms. Unruh advised the sheriff that one of her employees, Ila Miesbauer, had inexplicably and uncharacteristically not appeared for work on April 10, 11 or 13. (She had not been scheduled to work on April 12.) The employer's efforts to contact the employee had been unproductive, and the employer was concerned. Sheriff Terry telephoned the Miesbauer residence the same day but received no answer. The following day another telephone call was made with the same result. Sheriff Terry then went to the Miesbauer residence. After no response was received to ringing the doorbell, the sheriff walked around the house. He observed all doors were locked and then talked to a neighbor. The neighbor indicated it was unusual: (1) that the Miesbauers had left a garden tiller outside; and (2) for the Miesbauers to leave town without making arrangements with her for the care of the family pets. Through a lead from this neighbor, the sheriff was able to locate Lucille Ratzlaff, a sister of Mrs. Miesbauer, who resided in Hutchinson.

Sheriff Terry contacted Mrs. Ratzlaff on April 15, 1981, to ask if she knew of her sister's whereabouts. The sheriff expressed concern for the welfare of the Miesbauer pets inside the home. Mrs. Ratzlaff advised she did not know where her sister was and she would come to McPherson immediately. The sister was advised the Miesbauer house was locked and the name of the local locksmith. The sheriff's office contacted the locksmith's residence saying Mrs. Ratzlaff might be contacting him. Mrs. Ratzlaff and her son entered the Miesbauer home the same day with the assistance of the locksmith. The son found the nude, partially decomposed body of Ila Miesbauer in the basement covered with a blanket. The sheriff was called, who in turn summoned the local police and the coroner. Cause of death was strangulation by means of a piece of garden hose found near the body. A search warrant was then obtained for the premises.

Defendant moved to suppress all items taken from the house on

the grounds the entry therein by the Ratzlaffs and subsequently by law enforcement officers constituted an unlawful entry and search. It is the position of the defendant that the locksmith and relatives were agents of the sheriff who were directed by the sheriff to do that which the sheriff could not do directly. In support thereof, defendant notes that the locksmith, at one time, had been a reserve officer in the McPherson Police Department. Defendant does not specify what items he alleges were improperly seized but presumably he is primarily concerned with the body itself, the covering blanket and the piece of garden hose which was used to kill the deceased, as well as photographs taken by the police at the crime scene.

At the suppression hearing the sheriff testified to the above facts of his involvement and noted his office routinely assists people who are checking on the welfare of relatives or friends.

In *State v. Boswell,* 219 Kan. 788, 549 P.2d 919 (1976), this court observed:

"Before continuing, it should be noted that the conduct of a person acting independently and not under authority or direction of the state is not included in the proscriptions of the Fourth Amendment to the United States Constitution or of Section 15 of the Bill of Rights of the Kansas Constitution, and a search by a private citizen who is not acting as an agent of the state is not prohibited by these constitutional provisions." 219 Kan. at 793.

*State v. Bohannon,* 3 Kan. App. 2d 448, 596 P.2d 190 (1979), goes into greater detail in discussing the test to be applied in determining whether a private individual is acting for himself in conducting a search or whether he is acting as an agent for law enforcement officials. The facts herein clearly do not establish any agency relationship between the private citizens and the sheriff. However, we must point out that the agency questions only arise when a law enforcement officer has enlisted a private citizen to search premises for evidence of a crime which the officer believes has been committed. In the case before us, there is nothing in the record indicating the sheriff suspected that foul play was the reason for either Miesbauers' absence from employment. The discovery of the body was a surprise to all concerned and did not arise from any homicide investigation. The sheriff became involved by simply responding to a routine inquiry of a citizen concerned over the unusual absence of an acquaintance. After his initial visit to the premises he was concerned that the Miesbauer pets might be in the home and in need of care. The

relatives went to the home because of their own concerns after being contacted by the sheriff. The locksmith merely assisted the relatives. By no stretch of the imagination can the conduct of anyone involved in the entry of the home be termed insidious or nefarious. Further, the entry hardly rises to the level of "search." As a matter of public policy such neighborly concerns of friends and relatives and considerate responses by law enforcement officers are to be encouraged rather than condemned.

We conclude there was no illegal search and seizure and the trial court did not err in denying defendant's motion to suppress such evidence.

The second issue on appeal relates to alleged error in the admission of evidence of defendant's silence after being advised of his constitutional rights. This point was declared abandoned by defense counsel at the time of oral argument herein.

The third issue is whether the trial court erred in permitting a prosecution rebuttal witness to testify as to statements made by defendant to police officers as he was being returned to Kansas from California. The way this issue is presented is rather misleading. Prior to trial a hearing was had relative to particular conversations during the two-day car trip. At trial the testimony relative thereto was presented as State's rebuttal evidence to the insanity defense. The testifying officer did not testify as to particular conversations but rather generally concluded that defendant's actions and responses during the trip were normal and responsive. The State used the testimony to show normal behavior as rebuttal to defendant's medical expert who testified defendant had long-standing mental problems. As noted by the trial court at the pretrial hearing: (1) the conversations were no more than "small talk"; (2) the officers were not interrogating the defendant for investigative purposes; and (3) the statements were freely and voluntarily made.

The trial testimony was no more than evidence of defendant's demeanor at that particular point in time rather than the particular conversations at issue in the pretrial hearing. We find no error on this issue.

The fourth issue is another suppression question. Certain fellow prisoners in the McPherson County jail testified on behalf of the State as to statements made by the defendant to them during incarceration. There was no evidence as to any type of prior

"deal" with any such witnesses to the effect they were to try to obtain information from defendant. A similar issue was raised in *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976), wherein we said:

"Before examining the question it should be noted the exclusionary rule declared in *Massiah [v. United States,* 377 U.S. 201 (1964)] does not apply to voluntary statements of a defendant which are made to private citizens. (*People v. Smith,* 5 Ill. App. 3d 642, 283 N.E.2d 736.) It has been held that if a defendant is injudicious in his conversations with fellow prisoners and the latter without prior arrangements with the police take it upon themselves to tell police officials of these conversations such conversations are admissible in evidence. (*United States v. Aloisio,* 440 F.2d 705 [7th Cir. 1971], cert. den. 404 U.S. 824, 30 L.Ed.2d 51, 92 S.Ct. 49; *United States v. Casteel,* 476 F.2d 152 [10th Cir. 1973]; *Milani v. Pate,* 425 F.2d 6 [7th Cir. 1970] cert den. 400 U.S. 867, 27 L.Ed.2d 107, 91 S.Ct. 109.)" 218 Kan. at 361.

See also *State v. Rouse,* 229 Kan. 600, 629 P.2d 167 (1981). We conclude this issue is without merit.

For his fifth issue defendant claims error in the trial court's refusal to change venue. The substance of defendant's argument is McPherson County is a small rural area and *for that reason* could not afford defendant a fair trial on the murder charge. Defendant further argues the requirement placed upon him by K.S.A. 22-2616(1) to demonstrate prejudice so great as to deny him a fair and impartial trial is unconstitutional.

The law favors a trial, criminal or civil, taking place in the locality from which the litigation arises. This view is by no means new and dates well back into Anglo-Saxon common law. In *Crocker v. Justices of the Superior Court,* 208 Mass. 162, 94 N.E. 369 (1911), the Massachusetts Supreme Judicial Court observed:

"It was the common law that the indictment for a crime must be found and tried in the county where it occurred, and ordinarily this principle was applied with great strictness." 208 Mass. at 167.

The federal and Kansas constitutions, Kansas statutes, and Kansas judicial pronouncements reflect the common law on venue.

Amendment Six of the United States Constitution reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the *State and district wherein the crime shall have been committed* . . . ." (Emphasis supplied.)

Section Ten of the Kansas Bill of Rights provides:

"In all prosecutions, the accused shall be allowed . . . a speedy public

trial by an impartial jury of the *county or district in which the offense is alleged to have been committed.*" (Emphasis supplied.)

Consistent with the federal and state constitutions and the common law policy of a trial taking place in the locality, K.S.A. 22-2616(1) declares:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

The Kansas statute reflects a balancing of the constitutional right to a fair and impartial trial and the constitutional declaration and common law belief that a trial occur in the county wherein the crime shall have been committed.

Recently the court in *State v. Shaffer,* 229 Kan. 310, 624 P.2d 440 (1981), discussed the matter of change of venue as follows:

"A change of venue will be granted a defendant when he or she can show prejudice has reached the community to the degree that it is impossible to get an impartial jury. Such prejudice may not be established by speculation but must be shown by specific facts or circumstances. *State v. Myrick & Nelms,* 228 Kan. 406, 616 P.2d 1066 (1980). Media publicity has never established prejudice per se. *State v. May,* 227 Kan. 393, 395, 607 P.2d 72 (1980). The granting of a change of venue lies within the sound discretion of the trial court. The burden is on the movant to show prejudice in the community, not as a matter of speculation but as a demonstrable reality." 229 Kan. at 320.

In *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977), we concluded:

"Thus, it has been held (1) the burden of proof is on defendant, (2) not only prejudice must be shown but it must be such prejudice as to make it reasonably certain the defendant cannot obtain a fair trial, (3) there must be more than speculation, (4) the state is not required to produce evidence refuting that of the defendant, and (5) granting a change of venue lies within the sound discretion of the trial court and its ruling will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant." 223 Kan. at 280.

Defendant cites no authority for his proposition that the burden of proving such prejudice as to warrant a change of venue has been placed upon him in violation of the United States Constitution. Our research has, likewise, disclosed no authority supporting this contention. Defendant has a constitutional right to be tried in the county or district which is the situs of the charged crime. In Kansas only the accused may waive this right and seek

change of venue. We see no constitutional impediment to placing the burden of establishing the requisite grounds for change of venue upon the defendant.

Turning to the evidence presented by defendant in support of his motion for change of venue and applying the standards set forth in *State v. Shaffer* and *State v. Sanders,* above set forth, we conclude the trial court did not err or abuse its discretion in denying defendant's motion for change of venue.

The sixth issue is rather novel. The trial judge had a policy of promoting good will for the court system by going to lunch with the jurors during trials. On one day of the trial herein the defendant became angry and disruptive. At lunch the judge was asked by a juror if this conduct should be considered by the jury. The judge answered "no." He then proceeded to caution the jury that actions observed at trial, including his own, could be misconstrued and advised jurors they needed to wait until the trial's end when he would instruct them on the law and how to decide the case.

In *State v. Coburn,* 220 Kan. 743, 556 P.2d 376 (1976), this court prescribed the standards to be utilized in determining whether improper communications with a juror warranted reversal of the judgment as follows:

"Not every jury is to be disqualified because of some improper communication or contact made to a juror prior to or during trial. The granting of a mistrial or new trial because of such conduct is generally regarded as resting in the sound discretion of the trial judge who is best able to assess the impact of any such approach upon the fairness of the trial (See Anno.: Juror—Communication with Outsider, 64 ALR 2d 162, 185-186). To warrant reversal of a judgment because of improper contact or communication between a juror and an outsider, there must be some showing or indication of injury, actual or potential, to the complaining party, or the act or conduct complained of must be such as to afford reasonable grounds to question the fairness of the trial or the integrity of the verdict, or as would tend to destroy or impair public confidence in trial by jury (*Id.,* pp. 165-166). The substance of the communication may be important. If the comment relates to the merits of the case, it will be more likely to be found prejudicial. However, if it relates to the case merely in a general or incidental manner it will more likely be found harmless." 220 Kan. at 746-47.

*Coburn,* of course, did not involve a complained-of judicial communication, but the same principles are applicable.

Defendant contends the trial judge's remarks constitute reversible error. We do not agree. Applying the aforedescribed tests, it is clear the complained-of remarks were in no way prejudicial to the

defendant. Accordingly, prejudicial error cannot be predicated upon these remarks.

This conclusion should not be interpreted to mean this court condones the policy of a trial judge having such a private conversation with sitting jurors concerning in-progress trials. The practice of the trial judge having lunch with sitting jurors, however well intentioned, is fraught with danger to the concept of a fair trial. The better practice, by far, is to avoid such situations.

For his seventh issue defendant contends the trial court erred in refusing to give defendant's proposed instructions on (1) premeditation and (2) the relationship between alcohol and the insanity defense.

The trial court gave PIK Crim. 56.04(*b*) on premeditation. The instruction given by the trial court adequately states the applicable law in Kansas. *State v. Martinez,* 223 Kan. 536, 537, 575 P.2d 30 (1978), and *State v. Foy,* 224 Kan. 558, 565, 582 P.2d 281 (1978).

We proceed now to the second phase of this issue. The trial court, in apparent reliance on *State v. Seely,* 212 Kan. 195, 510 P.2d 115, 73 A.L.R.3d 183 (1973), instructed the jury as follows:

"Insanity produced primarily by voluntary intoxication, existing only temporarily at the time of the alleged criminal act, is no defense to the crime charged. Temporary insanity immediately and primarily produced by intoxication does not destroy responsibility for the alleged criminal act where the defendant, when sane and responsible, voluntarily made himself drunk."

The trial court additionally gave PIK Crim. 54.12 as follows:

"Voluntary intoxication is not a defense to a criminal charge, but when a particular intent or other state of mind is a necessary element of the offense charged, intoxication may be taken into consideration in determining whether the accused was capable of forming the necessary intent or state of mind."

Defendant contends that his proposed instruction should have been given instead of the *Seely* instruction. We do not agree. The trial court's instructions adequately state the applicable law and the trial court did not err in refusing defendant's requested instruction on insanity and voluntary intoxication.

The eighth issue is whether the trial court erred in admitting photographs of the deceased. Only two such photographs were admitted. Neither showed the body after invasion by autopsy procedures.

The issue of gruesome photographs has been before Kansas

appellate courts on numerous occasions. In *State v. Johnson,* 231 Kan. 151, 643 P.2d 146 (1982), this court noted:

"In a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to testimony of a doctor as to the cause of death even though they may appear gruesome. *State v. Wilson,* 220 Kan. 341, Syl. ¶ 5, 552 P.2d 931 (1976)." 231 Kan. at 157.

The photographs in question were necessary to illustrate the nature and extent of wounds inflicted upon Ila Miesbauer and to corroborate testimony of State witnesses. The photos were a true reproduction of relevant physical facts and conditions. We conclude the trial court committed no error in admitting the photographs.

As his ninth issue defendant contends he was denied effective assistance of trial counsel.

In *State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981), this court held:

"The rules relative to determination of effective assistance of counsel were stated in *Schoonover v. State,* 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978), and iterated in *State v. Voiles,* 226 Kan. 469, 470-471, 601 P.2d 1121 (1979), as follows:

'The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed.

'Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of "effective" counsel.

'In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells.' " 229 Kan. at 389.

Defendant was represented at trial by Charles I. Prather of the McPherson County Bar. Applying the *Crossman* standards to the facts herein, we have no hesitancy in concluding that defendant,

in fact, had effective assistance of counsel throughout the pretrial and trial proceedings. This point is wholly without merit.

As to his tenth and final issue defendant contends the trial court erred in finding defendant had abandoned his home prior to the discovery of the deceased's body. In view of the result heretofore reached on Issue No. 1, we need not determine this issue.

The judgment is affirmed.