No. 61,749

STATE OF KANSAS, *Appellant*, v. LARRY Z. SMITH, *Appellee*,
and

No. 61,750

STATE OF KANSAS, *Appellant*, v. LEIANA J. SMITH, *Appellee*.

(763 P.2d 632)

Opinion filed October 28, 1988.

*Leonard J. Dix*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Edward E. Bouker*, of Herman & Bouker, of Hays, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: The State of Kansas, pursuant to K.S.A. 22-3603, appeals from a pretrial order suppressing physical evidence in two companion cases on the basis that the evidence had been obtained as a result of an unreasonable search and seizure in violation of the Fourth Amendment. The two cases have been consolidated on appeal and were transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

The facts are not disputed. On October 3, 1987, Curtis L. Smee was performing his duties at Webster State Park as an employee of the State Department of Wildlife and Parks. He was responsible for collecting trash from the park's trash barrels. In carrying out those duties, he stopped at the park's Necessary Shop, apparently owned and operated by the defendants, Larry Z. and Leiana J. Smith. The Necessary Shop sold fish bait and other items to park visitors. The shop displayed a "closed" sign and its trash barrel was empty. While checking it, however, Smee heard an odd hissing sound like water running or spraying. He circled the building to locate the source of the noise.

Attached to the Necessary Shop by an enclosed walkway was the trailer home of the shop's proprietors, the defendants herein. Smee located a leaking hose from a water cooler, but it was not the source of the noise. He continued on around the trailer house and discovered its rear door standing open. It appeared to have been broken into or forced open. He then entered the house and could hear the hissing noise more clearly. He proceeded through the house in the direction of the noise and found a leaking hose in the runway between the shop and the defendants' home. He turned the water off and then reentered the trailer house for the purpose of securing the open door. In the house he noticed a cupboard door standing open and on one of its shelves he saw a water pipe and several bags containing what appeared to be marijuana. He walked to the cupboard to get a closer look, then proceeded on to the rear door and, from the interior, secured its hasp with a screwdriver. He then walked back through the trailer, into the shop, and out the shop's front door, locking it behind him.

Later, Smee informed the park rangers of what he had seen. The rangers contacted the sheriff's office, which in turn used the information provided by Smee to secure a search warrant. Law enforcement officers seized numerous items from the trailer, including about five ounces of marijuana, several pipes, and two packages of rolling papers. The defendants were each charged with one count of possessing marijuana with intent to sell, K.S.A. 1987 Supp. 65-4105(b)(1); one count of possessing drug paraphernalia, K.S.A. 65-4152; one count of possessing controlled substances upon which no tax had been paid, K.S.A. 1987 Supp. 79-5208; and one count of conspiracy to possess marijuana with intent to sell, K.S.A. 21-3302 and K.S.A. 1987 Supp. 65-4127b.

The defense filed a motion to suppress the physical evidence as the fruit of an unreasonable search by Smee in violation of the protections guaranteed by the Fourth Amendment. Following a hearing at which Smee testified, the trial court sustained the motion. The State then appealed. We reverse the trial court.

The Fourth Amendment to the United States Constitution, which is made applicable to the various states by the Fourteenth Amendment, reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In the instant case, the search by law enforcement officers was pursuant to a warrant issued upon probable cause as set forth in the sheriff's affidavit. However, the information in the sheriff's affidavit was obtained from Smee as a result of his warrantless entry into the appellees' property. It is the entry and discovery of the marijuana and paraphernalia by Smee which are alleged to have violated the Fourth Amendment safeguards under the "fruit of the poisonous tree" doctrine as promulgated in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), and its progeny.

The narrow issue before us is whether the fact that Smee was a State employee engaged in his job of collecting trash requires the exclusion of the physical evidence he observed during his entry into the Smiths' residence and business property. It is generally recognized, and this court has held, that a search by a private citizen, who is not acting as an agent of the State, is not

subject to the Fourth Amendment. *State v. Miesbauer*, 232 Kan. 291, 293, 654 P.2d 934 (1982); *State v. Boswell*, 219 Kan. 788, 793, 549 P.2d 919 (1976) (citing *Burdeau v. McDowell*, 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 [1921], and Annot., 36 A.L.R.3d 553). The corollary, of course, is that searches by agents of the State are subject to constitutional restrictions. This court has held also that the kind of "search" subject to the Fourth Amendment and to Section 15 of the Kansas Constitution's Bill of Rights impliedly involves an exploratory investigation. *State v. Yates*, 202 Kan. 406, Syl. ¶ 1, 449 P.2d 575 (1969). In this case, Smee took it upon himself to determine the source of the hissing noise he heard while conducting his duties as a State employee. In doing so, he approached the house trailer, which he entered in search of the source of the noise. Appellees contend, and the district court held, that the unauthorized entry by Smee was conducted in the course of his duties as a State employee, and therefore the Fourth Amendment and the exclusionary rule required exclusion of all evidence which resulted from that initial entry.

In the present case there is no contention that Smee had any connection with the park rangers, the sheriff, or any other law enforcement agency. His entry into the Smith property was not an investigatory search made in collusion with law enforcement officers or any other government employees or officials. Smee's actions were found to be in good faith and, as the trial judge stated, he "was apparently acting as a good neighbor" when he made his unauthorized entry into the Smiths' property. The court also found there were no exigent circumstances which would justify the warrantless search as an exception to the general rule that all searches must be conducted pursuant to a warrant supported by probable cause for the issuance of the warrant. Although it may be argued that the entry by Smee and the inadvertent discovery of the marijuana and paraphernalia was not a "search" in the usual connotation of the term, for the purposes of this opinion we will consider it as a search for Fourth Amendment analysis.

The trial court concluded that because Smee was a government employee his actions in entering the Smith property "are constitutionally subject to the Fourth Amendment's prohibition against unreasonable searches and seizures." In doing so the court stated:

"In *New Jersey v. T.L.O.*, 469 U.S. 325, [83 L. Ed. 2d 720,] 105 S. Ct. 733 [1985], the Supreme Court recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by school officials as well as law enforcement officials. Speaking for the majority of the Court, Justice White said, at page [335]:

'It may well be true that the evil toward which the Fourth Amendment was primarily directed was the resurrection of the pre-Revolutionary practice of using general warrants or "writs of assistance" to authorize searches for contraband by officers of the Crown. (Citations omitted.) But this Court has never limited the Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police. Rather, the Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon "governmental action"—that is, "upon the activities of sovereign authority." (Citation omitted.) Accordingly, we have held the Fourth Amendment applicable to the activities of civil as well as criminal authorities: building inspectors, see *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L. Ed. 2d 930 (1967), OSHA inspectors, see *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312-313, 98 S.Ct. 1816, 1820, 56 L. Ed. 2d 305 (1978), and even firemen entering privately owned premises to battle a fire, see *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L. Ed. 2d 486 (1978), are all subject to the restraints imposed by the Fourth Amendment. As we observed in *Camara v. Municipal Court, supra*, "[t]he basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." 387 U.S., at 528, 87 S.Ct. at 1730.'

Since Mr. Smee is obviously a government employee who trespassed in and through the defendants' residence in search of a water line leak, his actions in so doing are constitutionally subject to the Fourth Amendment's prohibition against unreasonable searches and seizures."

Appellees, likewise, rely heavily upon *T.L.O.* and the cases cited therein.

*T.L.O.* involved a fourteen-year-old freshman at a public high school. A teacher caught T.L.O. smoking in a school restroom in violation of school rules. The teacher escorted her to the assistant principal's office where she denied she had been smoking and claimed that she did not smoke at all. The assistant principal demanded to see T.L.O.'s purse and, upon opening it, found a package of cigarettes. He also noticed a package of cigarette rolling papers and, in searching further, found some marijuana, empty plastic bags, a quantity of one-dollar bills, and a pipe. In a separate zippered compartment of the purse, he found two letters implicating T.L.O. in marijuana dealing and a list of names of people who owed her money.

During delinquency proceedings, T.L.O. moved to suppress

the physical evidence on the grounds that it was obtained in violation of the Fourth Amendment. The Supreme Court, on *certiorari*, held that the constitutional protection against unreasonable searches applies to schoolchildren searched by school officials. See Comment, *Constitutional Law: Privacy Penumbra Encompasses Students in School Searches*, 25 Washburn L. J. 135 (1985).

In *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), Camara was charged with a criminal offense of violating the San Francisco housing code for refusing to allow a building inspector to inspect his residence without a warrant. The Supreme Court held that an administrative search of the defendant's home was subject to the restrictions of the Fourth Amendment even though the proposed search did not involve law enforcement officials, and even though there was no indication that a crime had been or was being committed.

In a companion case, *See v. City of Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967), a representative of the Seattle fire department sought to enter and inspect, without a warrant, a commercial warehouse owned by See. The proposed inspection was part of a periodic city-wide canvass to determine compliance with Seattle's fire code. See refused entry to the fire department inspectors. The Supreme Court held that searches of commercial properties, as well as residential, were subject to the warrant and reasonableness requirements of the Fourth Amendment.

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978), involved an attempt by an inspector from the Occupational Safety and Health Administration to conduct a warrantless inspection of the business premises of Barlow's, Inc., an electrical and plumbing installation business. Mr. Barlow refused the inspector admission without a warrant. Citing *Camara* and *See*, the Supreme Court stated:

"This Court has already held that warrantless searches are generally unreasonable, and that this rule applies to commercial premises as well as homes. . . .

"These same cases also held that the Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *Ibid.* The reason is found in the 'basic purpose of this Amendment . . . [which] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' *Camara*, [387 U.S.] at 528 [, 18 L. Ed. 2d 930, 87 S. Ct. 1727]. If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory

standards. It therefore appears that unless some recognized exception to the warrant requirement applies, *See v. Seattle* would require a warrant to conduct the inspection sought in this case." 436 U.S. at 312-13.

In *Michigan v. Tyler*, 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978), police and fire officials conducted several warrantless searches at the scene of a fire which destroyed a furniture store in Michigan. The fire broke out about midnight and was finally extinguished about 4:00 a.m. During that period, fire officials took pictures and removed several plastic containers containing flammable liquid. At 8:00 the same morning, fire officials returned to the scene for further investigation. They returned again on at least three occasions—once four days, once seven days, and once twenty-five days after the fire. All of the searches were made without a warrant. During these visits, additional evidence was seized. Tyler was prosecuted on arson charges and evidence seized during the warrantless searches by the fire officials was used against him. The Supreme Court found the initial search during the fire was constitutional due to the exigent circumstances that existed and also found the search conducted later that morning was constitutional as being merely a continuation of the initial search conducted during the fire. However, the Supreme Court found the three searches made days after the fire, at times when no emergency or exigent circumstances existed, violated the Fourth Amendment.

Justice Stewart, writing for the majority, stated:

"The decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime. As this Court stated in *Camara v. Municipal Court*, 387 U.S. 523, 528, the 'basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. *See v. Seattle*, 387 U.S. 541; *Marshall v. Barlow's, Inc., ante*, at 311-313. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment." 436 U.S. at 504-05.

There are several distinctions between these cases and the one now before us. One common thread runs through the cases in which the Supreme Court has held that a warrantless search is unreasonable and within the protections afforded by the Fourth

Amendment. In every case, the search has been conducted or sought by government "officials" or "agents" as a part of their regular duties of employment and were conducted within the scope of that employment. No case has been cited by counsel, and our research has found none, in which the sole basis for invoking the Fourth Amendment protections was the mere fact that the person who discovered the incriminating evidence happened to be a government employee as opposed to a private citizen. In every case the search or proposed search has furthered the government's objectives as they relate to the duties of the government employee.

In the present case, Smee's duties were limited to the collection of trash. In that position he happened to be a State employee. His illegal entry into the Smiths' property had no connection with his duties of collecting trash and no connection with the objectives of the governmental entity which employed him. As stated by the trial court, his actions were nothing more than those of "a good neighbor." Under such circumstances his actions were tantamount to those of a private citizen with no different status than that of an employee of an independent privately owned trash service. As stated earlier, there was no evidence of any connection or collusion between Smee and law enforcement officials or other government officials or agencies which led to the entry into the Smiths' property. Nor was this a search, investigatory or otherwise, conducted at the instigation of any other employees, agents, or officials of any government agency. If there had been any such connection or collusion, we agree that the full panoply of Fourth Amendment protections would apply. Smee, when he entered the Smiths' property for absolutely no purpose connected with his employment, had the same status as any private citizen acting under similar circumstances. Compare *United States v. Smith*, 810 F.2d 996 (10th Cir. 1987), *cert. denied* _____ U. S. _____ (October 11, 1988).

In *State v. Miesbauer*, 232 Kan. 291, 654 P.2d 934 (1982), the defendant was convicted of the first-degree murder of his wife. In April 1981 the McPherson County Sheriff received a telephone call from Mrs. Miesbauer's employer, who reported that Mrs. Miesbaum had failed to appear for work for several days. After several telephone calls proved unproductive, the sheriff drove to the Miesbauer residence. He received no response at

the door and walked around the house observing that all the
doors were locked. He then talked with a neighbor who voiced
some concern about the whereabouts of the Miesbauers and
informed the sheriff that Mrs. Miesbauer had a sister who lived
in Hutchinson. The sheriff contacted the sister, advised her of
his concerns, and gave her the name of a local locksmith. The
sister drove to McPherson, contacted the locksmith, and gained
entry to the Miesbauer home. The victim's body was found in the
basement. The sheriff was contacted, a warrant was obtained,
and a search was conducted which resulted in physical evidence
in addition to the body of the victim.

The defendant moved to suppress all evidence recovered from
the Miesbauer home, asserting it was obtained improperly. This
court held:

"The conduct of a private person acting independently and not under the
authority or direction of the State is not included in the proscriptions of the
Fourth Amendment of the United States Constitution or section 15 of the Kansas
Bill of Rights." 232 Kan. 291, Syl. ¶ 1.

In the opinion, Justice McFarland, writing for a unanimous
court, stated:

"The facts herein clearly do not establish any agency relationship between the
private citizens and the sheriff. However, we must point out that the agency
questions only arise when a law enforcement officer has enlisted a private citizen
to search premises for evidence of a crime which the officer believes has been
committed. In the case before us, there is nothing in the record indicating the
sheriff suspected that foul play was the reason for either Miesbauers' absence
from employment. The discovery of the body was a surprise to all concerned and
did not arise from any homicide investigation. The sheriff became involved by
simply responding to a routine inquiry of a citizen concerned over the unusual
absence of an acquaintance. After his initial visit to the premises he was
concerned that the Miesbauer pets might be in the home and in need of care. The
relatives went to the home because of their own concerns after being contacted
by the sheriff. The locksmith merely assisted the relatives. By no stretch of the
imagination can the conduct of anyone involved in the entry of the home be
termed insidious or nefarious. Further, the entry hardly rises to the level of
'search.' *As a matter of public policy such neighborly concerns of friends and
relatives and considerate responses by law enforcement officers are to be
encouraged rather than condemned.*

"We conclude there was no illegal search and seizure and the trial court did not
err in denying defendant's motion to suppress such evidence." 232 Kan. at
293-94. (Emphasis added.)

The connection of the sheriff in *Miesbauer* to the warrantless
discovery of evidence was much closer than the connection in

this case between law enforcement officials and Smee's discovery of marijuana in the Smiths' trailer home.

The underlying rationale for application of the exclusionary rule is to deter law enforcement and other government officials and agents from unreasonable intrusions upon the lives and property of citizens. *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961). To exclude relevant evidence solely for the reason that it was inadvertently stumbled onto by a government employee, as in this case, bears no rational relationship to the reasons for and the purposes of the exclusionary rule. Absent any showing that Smee entered the Smiths' property as a part of his duties of employment or at the instigation of or in collusion with other government officials or agents, his actions amounted to nothing more than a similar intrusion by a private citizen. We hold that under the facts of this case, the Fourth Amendment prohibition against unreasonable warrantless searches does not apply and therefore the exclusionary rule does not bar the admissibility of the evidence seized in this case.

The judgments are reversed and the cases remanded for further proceedings.

HERD, J., concurring in the result: I agree with the result reached by the majority but think the trial court's decision should have been reversed on the theory Smee's unauthorized entry into the Smith home was reasonable because of exigent circumstances. The majority opinion rules that under the Fourth Amendment to the United States Constitution a government employee may be the same as a nongovernment employee because of a job description. I believe this is an invitation to search and seizure abuse.