(218 P.3d 441)
No. 100,888

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER J. BRITTINGHAM, *Appellant*.

Petition for review granted September 8, 2010.

Opinion filed October 30, 2009.

*Rick Kittel*, of Kansas Appellate Defender Office, for the appellant.

*Russell A. Coleman*, assistant county attorney, and *Steve Six*, attorney general, for the appellee.

Before MALONE, P.J., PIERRON and LEBEN, JJ.

PIERRON, J.: Christopher J. Brittingham appeals his drug convictions, alleging the trial court erred in denying his motion to suppress. Specifically, Brittingham contends that the public hous-

ing employees who entered his apartment did so illegally. We affirm.

On Friday, February 2, 2007, a sewer backed up in Wheatland Homes, a public housing complex managed by the North Newton Housing Authority. A drain company responded and fixed the drainage problem that night. The following Monday, Wheatland Homes Executive Director Ron Schlesener met with maintenance personnel and discussed the drainage problem. At the meeting, Schlesener inquired as to whether any of the other apartments in the fourplex where the back-up occurred had been checked for damage. Upon learning they had not, Schlesener directed maintenance personnel to do so.

Brittingham's apartment was part of the fourplex where the sewer problem had been reported. Emma Hutson, a maintenance worker, went to check Brittingham's apartment. After receiving no response, Hutson, pursuant to housing authority policy, entered the apartment with her passkey and checked the bathroom for damage. Hutson then noticed two people who were unresponsive and called Schlesener to inform him. Schlesener responded to the scene and tried to rouse the two individuals. When Schlesener was unable to obtain a response from either person, he called 911.

Ray Claassen, Chief of the North Newton Police, responded to the medical call and entered the apartment. Claassen saw the two nonresponsive individuals and determined that they both had a pulse and were breathing. Claassen yelled at the individuals and physically shook them. The individuals, later identified as Brittingham and Carolyn Greer, awoke and declined medical attention. When Claassen started to leave the apartment, he noticed drugs and drug paraphernalia in plain view. Brittingham admitted that the items belonged to him. Brittingham consented to a search of his apartment and directed officers to locations where other drugs and paraphernalia could be found.

Brittingham was subsequently charged with one count each of possession of methamphetamine, contrary to K.S.A. 2008 Supp. 65-4160, and possession of drug paraphernalia, contrary to K.S.A. 2008 Supp. 65-4152(a)(2). Brittingham filed a pretrial motion to suppress, alleging that law enforcement's entry into his apartment

was made without probable cause and without a search warrant, and that his consent to search was not voluntary. The trial court denied Brittingham's motion, specifically finding that Hutson and Schlesener were not government employees and, therefore, were not subject to the Fourth Amendment to the United States Constitution. Thereafter, Brittingham was found guilty as charged following a bench trial on stipulated facts. He was sentenced to an 18-month term of probation, with an underlying prison term of 11 months.

Brittingham argues on appeal that the trial court erred in denying his motion to suppress. Although the search of Brittingham's apartment was conducted after law enforcement observed drugs and drug paraphernalia in plain view and received consent from Brittingham to search, law enforcement was initially called to the scene following Hutson and Schlesener's entry into the apartment. Brittingham contends that as employees of the public housing authority, Hutson and Schlesener were government actors and, therefore, were subject to the Fourth Amendment prohibitions against warrantless searches. Accordingly, Brittingham contends the discovery of the drugs and paraphernalia must be suppressed as "fruit of the poisonous tree."

When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008). The State bears the burden of proof on a suppression motion. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights generally prohibit the warrantless entry of a person's home. *Payton v. New York*, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. [Citations omitted.]" *Silverman v. United States*, 365 U.S. 505, 511, 5 L. Ed. 2d 734, 81 S. Ct. 679 (1961).

Absent exigency or consent, warrantless entries into a home are per se unreasonable. *Steagald v. United States*, 451 U.S. 204, 211, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981); *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007) (listing exceptions to the search warrant requirement).

However, the protections of the Fourth Amendment only apply to governmental action; a private person not acting as a government agent or with the participation or knowledge of the government is beyond the scope of the Fourth Amendment. *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989); *State v. Smith*, 243 Kan. 715, Syl. ¶¶ 2, 7, 763 P.2d 632 (1988); *State v. Bohannon*, 3 Kan. App. 2d 448, 452, 596 P.2d 190 (1979). But if the government coerces, dominates, or directs the actions of a private person, a resultant search and seizure may implicate the guarantees of the Fourth Amendment. Whether the Fourth Amendment applies to a private person is determined after considering all the facts and circumstances of the case. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

Brittingham would have this court find that Hutson's and Schlesener's entry into his apartment implicates the Fourth Amendment simply because they are employed by a public housing authority. This argument fails. See *Smith*, 243 Kan. at 722 ("No case has been cited by counsel, and our research has found none, in which the sole basis for invoking the Fourth Amendment protections was the mere fact that the person who discovered the incriminating evidence happened to be a government employee as opposed to a private citizen. In every case the search or proposed search has furthered the government's objectives as they relate to the duties of the government employee.").

Because Hutson and Schlesener's status as public housing employees does not automatically invoke Fourth Amendment protections, we must determine whether they independently entered Brittingham's apartment or whether their entry constituted government action. "In deciding whether a private person has become an instrument or agent of the government, two important inquiries are: '(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search

intended to assist law enforcement efforts or to further his own ends.' " *Pleasant*, 876 F.2d at 797.

We note *United States v. Couch*, 378 F. Supp. 2d 50 (N.D. N.Y. 2005), where off-duty police officers, who were acting in their capacity as representatives of a public housing authority and not as police officers when they performed a lease inspection, were not acting as agents or instruments of the government.

Despite Brittingham's contention that Hutson and Schlesener's entry into his apartment was pretextual because the public housing authority has a zero tolerance drug policy, there is no indication that Hutson's and Schlesener's initial entry into the apartment was for the purpose of finding drugs or was otherwise done at the direction of, or in involvement with, law enforcement. Hutson was not asked by law enforcement to inspect or search the room, and there was no police participation of any kind in Hutson's or Schlesener's entry. Nor is there any evidence that Hutson or Schlesener had any intent to assist law enforcement efforts. Rather, Hutson's entry was a routine maintenance call for the purpose of determining whether the sewage issue had affected Brittingham's apartment.

Schlesener's entry was for the purpose of helping with the unresponsive individuals Hutson found inside. Thereafter, the police became involved only after Schlesener was unable to awaken the individuals. These were appropriate checks on the welfare of the individuals. See *State v. Jones*, 24 Kan. App. 2d 405, 947 P.2d 1030 (1997). Despite Brittingham's suggestion to the contrary, Chief Claassen testified that he was called to check on the two nonresponsive individuals and could not recall whether he had been informed that drugs were found at the apartment.

The trial court specifically ruled on all the important issues.

"Well, we'll start at the beginning, and I think counsel knows this. This is probably more for Mr. Brittingham's benefit than for counsel, but we all know that your home is your castle. The government can't intrude into your home without a search warrant unless there are certain exceptions met, just as [the prosecutor] outlined in his closing statements, and one exception to that, of course, is a consent to search and/or an emergency situation, and so—and I'm going to start with where [the prosecutor] left off.

"In fact, during [defense counsel's] closing arguments the note I made to myself . . . that [Hutson] the maintenance worker that went in, really can't have an illegal entry under a Fourth Amendment analysis because she's not a part of the government. If it were shown that she was an agent for the police, that [Hutson] was in fact a police agent in some fashion and she'd been directed by Chief Claassen or one of the detectives to go and search your home and she was acting on their behalf, then it could be construed that she was working for the government. There's not a hint or a suggestion of that at all . . . if I look at it in the defense's best case scenario and [Hutson] or . . . our witness—the apartment manager went in in violation—for the sake of argument let's just say it was a violation for [Hutson] and the apartment manager to go into that apartment. That's not a violation of the Fourth Amendment. It might be a violation of your lease agreement that you could take them to task in . . . [landlord]/tenant court or small claims court or something, but they're free to. They're not bound by the Fourth Amendment of the Constitution. The Fourth Amendment just guarantees folks protection from the government and the government didn't go into your home that day, not at first, and so after that I think plainly the police action is okay by constitutional requirements.

"After you could not be aroused first by [Huston's] going into the apartment and then . . . Mr. Schlesener—once he goes in and he yells and he can't wake you and the other person up, he would have been remiss, I think, not to contact the authorities and call 911, and that's what happened.

"Chief Claassen arrives at the scene. It's okay for him to go in at that point. Really it's kind of a welfare check to see if you're alive or dead, and he shakes you to the point where finally after about five minutes you wake up. He's there lawfully. . . . There's nothing unlawful about Chief Claassen coming into the apartment at that point and it doesn't matter if he knows there's drug paraphernalia there or not. He has to come in to make sure you're alive, and I think, as [the prosecutor] alluded to, your department could be civilly liable if they didn't do some follow-up. For example, he finds out that you have a pulse so should he have turned and left the room even though you weren't awake and couldn't be woken? Well, of course not. You could be in some kind of a coma or something and need medical attention, so it was reasonable for him to be there. It was not an unlawful intrusion at that point even though there's no search warrant. He could be there under those circumstances to check on your health.

"After that, of course, then he's apparently—as I understand the scene, can't help but notice that there's drugs and paraphernalia out in plain sight. At that point I think . . . he's not obligated just to ignore that. He's seen the drugs in plain sight. They're in plain view. Can he seize the drugs? Yes. Of course he can. I know that Chief Claassen didn't take the drugs. Another officer came along. Detective Torres came along and took the drugs, and then it's really uncontroverted what happened.

"I think, Mr. Brittingham—I don't doubt that you were afraid. I think your words were scared the crap out of me, and I can appreciate that in looking at the

circumstances here. I don't doubt that you were scared. By the same token, I don't think . . . that raises to the level that . . . your statements could somehow be construed as coerced. No one coerced you or tried to ask you questions. You just volunteered information. The jig was up, so to speak. The drugs were in the room, you're there. Right away you volunteer that they're your drugs, they're not your partner's drugs, and so you've incriminated yourself really without, again, any violation of your constitutional rights because the police weren't there coercing statements out of you, and I'm convinced that [Chief Claassen's] statements and Detective Torres' statements were very credible, and that's what I find happened and that is, you made incriminating statements.

"You even assisted in the search when you weren't required to do so. I think it's probably true that at that point you were simply wanting some help and you needed some help and that's that, so the statements were voluntary, the search was with your consent, the police were there lawfully . . . even looking at it in a light most favorable to the defendant as this point, insofar as the management of the apartment is concerned, there's really—not pertinent at all whether they were there legally or illegally, not at least in this venue looking at your constitutional safeguards, so I find that the motion to suppress must be overruled and denied. It is."

Hutson and Schlesener's entry into Brittingham's apartment was not done at the direction of, or in participation with, law enforcement and was not done in furtherance of the government's objectives. Accordingly, their entry did not implicate the Fourth Amendment. The trial court properly denied Brittingham's motion to suppress.

Affirmed.