No. 100,888

STATE OF KANSAS, *Appellee,* v. CHRISTOPHER J. BRITTINGHAM, *Appellant.*

(294 P.3d 263)

598

Opinion filed February 15, 2013.

*Rick Kittel,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Russell A. Coleman,* assistant county attorney, argued the cause, and *Steve Six,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The trial court found Christopher Brittingham guilty on two counts—possession of drugs and possession of paraphernalia—based upon stipulated facts, after the district court had denied Brittingham's attempts to suppress his statements and the drug-related evidence as being products of an unlawful search and seizure. The drugs and paraphernalia were first observed in Brittingham's apartment by a public housing employee who had made an uninvited entry into the apartment to check for potential damage from a sewer back-up at the facility. The Court of Appeals affirmed the district court's determination that the public housing employee was not a government actor subject to the constitutional restrictions on unreasonable searches and seizures in *State v. Brittingham,* 42 Kan. App. 2d 859, 218 P.3d 441 (2009). We granted review and affirm the result reached by the Court of Appeals.

FACTUAL AND PROCEDURAL OVERVIEW

Ron Schlesener, director of the North Newton Housing Authority (NNHA), received notice on Monday morning, February 5, 2007, that a sewer back-up had occurred over the weekend in a NNHA apartment building, where Brittingham resided in a studio apartment. Schlesener instructed Emma Hutson, a NNHA maintenance worker, to enter Brittingham's apartment to check for pos-

sible water damage from the sewer back-up. After knocking and receiving no response, Hutson entered the apartment and looked for damage in the bathroom. While in the apartment, Hutson saw two unresponsive individuals lying in bed. She also observed drugs and drug paraphernalia in plain view on the coffee table.

Hutson left the apartment without attempting to awaken the occupants. She informed Schlesener about the results of her inspection and then shared her concerns about the two apparently unconscious individuals and the "drugs and things" she had observed while in the apartment. Schlesener personally went to the apartment and attempted to arouse the two occupants. When he could not awaken them, he called 911 to report that there were two unresponsive people in an apartment.

The North Newton Chief of Police was the first to respond. After visiting with Schlesener, the Chief entered the apartment and, with some effort, was able to arouse the occupants and elicit their identities as Brittingham and Carolyn Greer. The Chief was able to observe the drugs and paraphernalia in plain view.

Brittingham quickly asserted ownership of the drugs and paraphernalia, and he consented to the further search of his apartment. Detective Nef Torres was called in to complete the search. During the search, Brittingham assisted the officers in locating other items of interest and requested help with his drug problem. The fruits of the search ultimately led to charges against Brittingham for drug possession under K.S.A. 2006 Supp. 65-4160 and for possession of drug paraphernalia under K.S.A. 2006 Supp. 65-4152(a)(2).

Before trial, Brittingham filed a motion to suppress. He argued that Hutson and all subsequent persons who entered the apartment were government actors subject to the limitations of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. Given that no one had obtained a warrant, Brittingham contended that everything discovered after Hutson's entry was tainted and required suppression.

The district court denied the suppression motion, finding that neither Hutson nor Schlesener were government actors for the purpose of the Fourth Amendment. The district court also concluded that the Chief was legally in the apartment for an appro-

priate health and welfare check and that, therefore, the plain-view doctrine applied to the Chief's discovery of the drugs and paraphernalia.

The case then proceeded to a bench trial on stipulated facts, which included the evidence from the suppression hearing. Brittingham preserved his suppression challenge by objecting to the admission of any evidence obtained or any statements made to the police on the day of the search. After acknowledging Brittingham's objections, the district court found sufficient evidence in the stipulated facts to convict Brittingham on both counts.

Brittingham then timely appealed his convictions, challenging the district court's denial of his suppression motion. Relying on this court's decision in *State v. Smith*, 243 Kan. 715, 763 P.2d 632 (1988), Brittingham argued that both Hutson and Schlesener were government agents because they were employed by the government and their uninvited entry into his apartment was within the scope of that employment. Therefore, as government agents, they were subject to the constitutional prohibitions against warrantless searches.

The Court of Appeals found that Hutson and Schlesener were not government agents and, therefore, not subject to constitutional restrictions. *Brittingham*, 42 Kan. App. 2d at 862-63, 865. The panel relied on the test set forth in *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989), which focuses on whether the individual acted at the direction of, or in participation with, law enforcement or acted in furtherance of the government's objectives. *Brittingham*, 42 Kan. App. 2d at 862-63. We granted Brittingham's petition for review with a view to determining whether Hutson was acting as a government agent when she entered Brittingham's dwelling without a warrant.

## GOVERNMENT AGENT FOR SEARCH AND SEIZURE PURPOSES

Brittingham's brief summarizes his argument as follows:

"Mr. Schlesener and Ms. Hutson were state actors, they did not have a warrant to search Mr. Brittingham's home, and none of the exceptions to the warrant requirement applied in this case, therefore their search[es were] per se unrea-

sonable and any evidence seized . . . as a direct result of their search[es] must be suppressed."

*Standard of Review*

The standard of review for a district court's ruling on a suppression motion is bifurcated, with factual findings reviewed for substantial competent evidence and the legal conclusions reviewed with a de novo standard. *State v. Woolverton,* 284 Kan. 59, 70, 159 P.3d 985 (2007). If the material facts are not disputed, the question of whether to suppress evidence becomes a question of law subject to unlimited review. *State v. Anderson,* 259 Kan. 16, 18, 910 P.2d 180 (1996).

*Analysis*

Both our federal and state constitutions provide protection against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Those rights are echoed in Kansas Constitution Bill of Rights, § 15: "The right of the people to be secure in their persons and property against unreasonable searches and seizures shall be inviolate." Where those constitutional constraints apply, a search conducted without a warrant is per se unreasonable, unless the State proves that the search fits within the description of an established exception to the warrant requirement. See *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); see also *State v. Henning,* 289 Kan. 136, 148, 209 P.3d 711 (2009) (State's burden to prove search was proper). There is no dispute that a search warrant was not issued in this case, and the district court did not apply a recognized exception to the warrant requirement to justify the initial warrantless entry into the apartment.

Instead, the district court found the constitutional provisions inapplicable in this case because it opined that Hutson and Schlesener were private citizens, rather than government actors. "The conduct of a private person acting independently and not under the authority or direction of the State is not included in the pro-

scriptions of the Fourth Amendment [to] the United States Constitution or section 15 of the Kansas [Constitution] Bill of Rights." *Smith*, 243 Kan. 715, Syl. ¶ 5. More specifically, "[a] search by a private citizen, who is not acting as an agent of the State, is not subject to the Fourth Amendment." 243 Kan. 715, Syl. ¶ 2. Without a constitutional violation, the exclusionary rule is inapplicable and Brittingham's suppression motion is without merit.

The Court of Appeals focused upon the two inquiries utilized to determine whether a private citizen has become an instrument or agent of the government: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his or her own ends." *Brittingham*, 42 Kan. App. 2d. 859, Syl. ¶ 5. But the focus here is whether the public housing authority employees' status as government employees made them government actors for Fourth Amendment purposes, rather than whether they had been recruited to act on behalf of law enforcement.

Our inquiry is necessary because the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights do not apply exclusively to the acts of law enforcement officers. In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985), the United States Supreme Court applied the constitutional prohibition on unreasonable searches and seizures to the search of a public high school student's purse by an assistant principal who was looking for cigarettes to refute the student's claim that she had not been smoking in a school restroom. In doing so, the Court discussed the scope of the Fourth Amendment, including other instances where it had found sufficient government action to trigger those constitutional protections:

"It may well be true that the evil toward which the Fourth Amendment was primarily directed was the resurrection of the pre-Revolutionary practice of using general warrants or 'writs of assistance' to authorize searches for contraband by officers of the Crown. [Citations omitted.] But this Court has never limited the [Fourth] Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police. Rather, the Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon 'governmental action'—that is, 'upon the activities of sovereign authority.' *Burdeau v. McDowell*, 256 U.S. 465,

475[, 41 S. Ct. 574, 65 L. Ed. 1048] (1921). Accordingly, we have held the Fourth Amendment applicable to the activities of civil as well as criminal authorities: building inspectors, see *Camara v. Municipal Court*, 387 U.S. 523, 528[, 87 S. Ct. 1727, 18 L. Ed. 2d 930] (1967)[;] Occupational Safety and Health Act inspectors, see *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312-313[, 98 S. Ct. 1816, 56 L. Ed. 2d 305] (1978)[;] and even firemen entering privately owned premises to battle a fire, see *Michigan v. Tyler*, 436 U.S. 499, 506[, 98 S. Ct. 1942, 56 L. Ed. 2d 486] (1978), are all subject to the restraints imposed by the Fourth Amendment. As we observed in *Camara v. Municipal Court*, . . . '[t]he basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' 387 U.S., at 528. Because the individual's interest in privacy and personal security 'suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards,' *Marshall v. Barlow's, Inc.*, [436 U.S.], at 312-313, it would be 'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.' *Camara v. Municipal Court*, [387 U.S.], at 530." *T.L.O.*, 469 U.S. at 335.

On the other hand, more recently, a New York federal district court concluded that individuals working for a public housing authority were not government actors for the purpose of the Fourth Amendment search and seizure requirements. *United States v. Couch*, 378 F. Supp. 2d 50, 58 (N.D.N.Y. 2005). Granted, the *Couch* defendant's principal argument was that the Fourth Amendment requirements applied because the apartment lease inspectors were off-duty police officers. The court rejected that argument, opining that the mere fact that the inspectors were also, at other times, employed as police officers did not make their search as an employee of the public housing authority the type of governmental activity required to trigger the Fourth Amendment. 378 F. Supp. 2d at 58 ("the Fourth Amendment does not apply to [the off-duty officers'] actions as [housing authority] representatives"). Yet the court also acknowledged that the public housing authority suspected drug activity in the apartments when it ordered the searches. Nevertheless, the court suggested that the public housing employees would retain their status as private citizens for Fourth Amendment, even if the apartment searches were a pretext to look for drugs, specifically stating:

"The Court also concludes that [the off-duty officers] were not acting as agents or instruments of the Government at the time of the lease inspection. Although it appears that the Government possessed some knowledge of the inspections and the suspicion of drug activity, [the off-duty officers] both stated that their intention was to perform their duties as [public housing authority] representatives, which constitutes a legitimate independent motivation for conducting an inspection or search. [Citations omitted.]" 378 F. Supp. 2d at 58.

Brittingham contends that our decision in *Smith*, 243 Kan. 715, goes further than the federal cases and establishes that, in this State, any government employee is subject to the constitutional prohibition against unreasonable searches and seizures any time that employee is acting within the scope of his or her employment. Actually, Brittingham's contention would be the converse of the actual holding in *Smith*, which found that a government employee will be treated like a private citizen for Fourth Amendment search and seizure purposes where the person was acting outside of the scope of the employee's governmental duties and not at the instigation of or in collusion with other government officials or agents. 243 Kan. at 724.

The facts in *Smith* are akin, but not identical, to this case. There, an employee of the Kansas Department of Wildlife and Parks was performing his duties of collecting trash from barrels in the Webster State Park when he heard a hissing sound like water running or spraying in the vicinity of the defendant's property. His investigation of the noise led him to a leaking hose to which he turned off the water. In the process, he observed what appeared to be marijuana and smoking paraphernalia in Smith's trailer house. The employee notified the park rangers, who notified the sheriff's office, that used the information to obtain a search warrant for the trailer house, pursuant to which drugs and paraphernalia were seized. The trial court granted Smith's motion to suppress the evidence, finding that the person initially entering the trailer house was a government employee subject to the Fourth Amendment's prohibition against unreasonable searches and seizures. This court reversed, emphasizing that the State employee's initial uninvited entry into defendant's residence "had no connection with his duties of collecting trash and no connection with the objectives of the

governmental entity which employed him." 243 Kan. at 722. In concluding, the majority in *Smith* stated:

"The underlying rationale for application of the exclusionary rule is to deter law enforcement and other government officials and agents from unreasonable intrusions upon the lives and property of citizens. [Citation omitted.] To exclude relevant evidence solely for the reason that it was inadvertently stumbled onto by a government employee, as in this case, bears no rational relationship to the reasons for and the purposes of the exclusionary rule. Absent any showing [the trash collector] entered the Smiths' property as a part of his duties of employment or at the instigation of or in collusion with other government officials or agents, his actions amounted to nothing more than a similar intrusion by a private citizen. We hold that under the facts of this case, the Fourth Amendment prohibition against unreasonable warrantless searches does not apply and therefore the exclusionary rule does not bar the admissibility of the evidence seized in this case." 243 Kan. at 724.

Justice Herd wrote a concurring opinion in which he expressed concern that the majority's ruling equating a government employee with a nongovernment employee for Fourth Amendment purposes based on a job description was "an invitation to search and seizure abuse." 243 Kan. at 724 (Herd, J., concurring). Justice Herd would have reversed the trial court on the theory that the trash collecting employee's unauthorized entry into Smith's home was reasonable because of exigent circumstances. 243 Kan. at 724.

Brittingham takes too broad a view of the holding in *Smith*. That case stands for the proposition that not all government employees are "government actors" for purposes of the search and seizure constraints of the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights, especially under circumstances where the government employee is not acting within the scope of his or her employment. See 1 LaFave, Search and Seizure § 1.8(d), p. 423 (5th ed. 2012) (citing *Smith* and other cases for the proposition that the Fourth Amendment "does not constrain the activities of persons acting in an essentially private capacity merely because they happen to be government employees"). But that holding does not give rise to a bright-line rule that equates a government employee with a constitutionally constrained government actor any time the employee is performing any activity within the scope of his or her employment. In other words, the applicability of consti-

tutional restraint is not driven solely by a government employee's job description. Rather, to be a constitutionally constrained government actor, the government employee must be performing an investigatory-type activity for the benefit of his or her employer. The restrained activity will normally be exploratory, rather than reactive, in nature.

*Michigan v. Tyler*, 436 U.S. 499, 506, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978), provides an example of applying the Fourth Amendment to a government employee based upon the activity being performed rather than upon the employee's job description. The Court distinguished between entering a burning building to extinguish a fire and remaining in the building for a reasonable time to investigate the cause of the fire on the one hand and reentering the building some time later to conduct an arson investigation on the other hand. The initial entry, as well as the warrantless seizure of evidence during that investigation, were constitutional while the warrantless reentry to investigate arson violated the Fourth and Fourteenth Amendments. 436 U.S. at 510-11. Granted, *Tyler* appears to have relied, at least in part, on an exigent circumstances rationale. Nevertheless, the case illustrates how to focus on a government employee's activity, rather than job description, for search and seizure purposes.

In this case, the public housing employees entered Brittingham's apartment in reaction to a maintenance problem, *i.e.*, a sewer backup. Even if one accepts that Hutson and Schlesener were government employees, there was no suggestion that they were investigating the possibility of any wrongdoing, either civil or criminal, on the part of the apartment occupants. Their actions were entirely reactive, rather than exploratory or regulatory, in nature. Similar to the circumstances in *Smith*, these employees serendipitously stumbled upon illegal contraband and unconscious occupants while performing a maintenance, safety, or damage-prevention function. Moreover, there is nothing here to support the underlying rationale for the exclusionary rule, which is "to deter law enforcement and other government officials and agents from unreasonable intrusions upon the lives and property of citizens." *Smith*, 243 Kan. at 724; see also *Couch*, 378 F. Supp. 2d at 62 ("to deter illegal police

conduct, the Court must apply the exclusionary rule and suppress any evidence unconstitutionally obtained"). These employees did not seek to intrude, but rather they sought to protect. They were not government actors within the meaning of the Fourth Amendment or § 15 of the Kansas Constitution Bill of Rights. Accordingly, the judgment of the Court of Appeals affirming the district court's refusal to suppress the evidence is affirmed.

Affirmed.

MORITZ, J., not participating.

PAULA B. MARTIN, District Judge, assigned.