NOT DESIGNATED FOR PUBLICATION

No. 112,613

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY E. WOOLDRIDGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed February 5, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Joseph M. Penney*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J, GREEN and STANDRIDGE, JJ.

*Per Curiam*: Jeffrey E. Wooldridge appeals his convictions and sentences for one count of possession of methamphetamine and one count of possession of drug paraphernalia. First, he argues the district court erred when it denied his motion to suppress certain evidence. Second, he argues the district court erred by imposing a term of probation that was longer than the one prescribed by statute. Finally, he argues that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by sentencing him based on a criminal history score that was not proved to a jury beyond a reasonable doubt.

1

FACTS

On February 18, 2013, Michael Moore, a law enforcement officer with the El Dorado Police Department, was on patrol in El Dorado. During his patrol, he observed a passenger in a blue pickup who was not wearing a seatbelt. Moore initiated a traffic stop and identified the passenger as Wooldridge. After identifying Wooldridge, Moore contacted dispatch to perform a wants and warrants check on him. The dispatcher informed Moore that Wooldridge had an active arrest warrant in Butler County.

At some point before this communication with dispatch, another law enforcement officer named James Marshall arrived at the scene of the traffic stop. After Moore and Marshall learned from the dispatcher that there was a warrant for Wooldridge's arrest, Marshall placed Wooldridge under arrest. Marshall then searched Wooldridge. In Wooldridge's pockets, Marshall found a cell phone and a black, magnetic key box. Moore opened the black key box and saw a white crystalline substance that Moore believed to be methamphetamine residue. The officers placed Wooldridge in the back of a patrol car.

A few minutes later, a dispatcher advised Moore that a hard copy of Wooldridge's arrest warrant could not be located. As a result, Moore released Wooldridge. Moore did, however, submit charges based on the suspected methamphetamine found during the postarrest search of Wooldridge. On August 16, 2013, the State formally charged Wooldridge with one count of possession of methamphetamine and one count of possession of drug paraphernalia.

Before trial, Wooldridge filed a motion to suppress all evidence obtained as a result of Marshall's search. In the motion, Wooldridge argued that his arrest was not lawful and therefore the warrantless search of his person pursuant to that arrest was a violation of the Fourth Amendment to the United States Constitution.

2

A hearing on the motion to suppress was held on February 11, 2014. The first witness was Joe Anderson, the assistant director for the Butler County 911 Center. Anderson clarified that the Butler County 911 Center was an agency separate and distinct from any police department. Anderson testified that part of his job as assistant director of the agency was to coordinate the storage of warrant records. Anderson further testified that his agency utilized an electronic database that contained information on warrants issued from El Dorado and from the Butler County Sheriff's Office.

Anderson explained that when a law enforcement officer conducted a traffic stop, it was a policy of his agency to enter the driver's license information into the electronic database to see if there was an active warrant pending for the individual. If the electronic database reflected an active warrant, the dispatcher made that information known to the officer who initiated the traffic stop. It was also a policy of his agency, however, to have the dispatcher subsequently contact the appropriate agency to confirm that the agency had a hard copy of the warrant. Anderson said this confirmation process took an average of 3 to 5 minutes but could take longer depending on the circumstances. If the dispatcher was confirming the warrant with the Butler County Jail, for instance, it could take up to 15 minutes to receive confirmation of the warrant if the jail was having a busy night.

Anderson also testified about the contents of a dispatch sheet showing a record of the call concerning Wooldridge. The sheet showed that the call began at 5:06 p.m. and that the dispatcher thereafter affirmatively advised the officers that Wooldridge was wanted by Butler County. The document did not, however, contain any information regarding the dispatcher's later communication advising Moore that a hard copy of Wooldridge's arrest warrant could not be located. Nevertheless, Anderson testified that if an active warrant appeared in the database and a hard copy of the warrant could not be found, the officer conducting the traffic stop would be notified of this fact. At that point, it was up to the officer to determine how to handle the situation. Anderson explained a missing hard copy of a warrant could be the result of a clerical error, *e.g.*, the warrant

3

already had been served but not taken out of the system. Anderson noted that the policy of confirming warrants was instituted within the last 2 1/2 years. Prior to that time, the dispatchers relied exclusively on the computer system.

Moore also testified at the hearing. After explaining the circumstances of the traffic stop and Wooldridge's arrest, Moore testified that it was uncommon for dispatch to initially inform an officer that a warrant existed and then to hear back from dispatch that the warrant could not be physically confirmed. Moore testified that although he had arrested approximately 40 individuals based on information from dispatch that a warrant existed, he could not recall a single time other than this instance when dispatch was unable to physically confirm the warrant. Moore also testified that it was his practice to arrest a person as soon as he was informed by dispatch that there was an active warrant for that person but before the warrant was confirmed by dispatch.

Moore also addressed some policies of the police department. After an arrest, it was the department's policy to place an arrested person in the back of a patrol car. Moore stated it also was departmental policy to search a person before placing him or her in the back of a patrol car. Moore testified that part of the reason for the search was to detect weapons or means of escape. But Moore also said that if 10 minutes elapsed without a physical confirmation of the warrant appearing in the electronic database, he would release the arrestee. In this case, Moore called dispatch to ask if it had confirmed the warrant before being told that the warrant could not be located.

Upon consideration of the evidence presented and arguments of counsel, the district court ultimately denied Wooldridge's motion to suppress the evidence. The court found the computerized database used by dispatch generally was regarded as up to date, that it was unusual for the database to be inaccurate, and that an officer had the right to rely on information obtained through the database. The district court also noted that once an officer learned of an arrest warrant, there was an increased risk that the person may

4

flee or become violent. Finding Moore relied in good faith on the initial information provided by the dispatcher, the district court held the good-faith exception to the exclusionary rule applied, which meant the evidence seized was admissible.

After his motion to suppress was denied, Wooldridge waived his right to a jury trial and agreed to a bench trial on stipulated facts. As part of the stipulated facts, the parties specifically agreed that Wooldridge would maintain his objection to the admission of the evidence found in his pockets after his arrest, thus preserving the issue for appeal. The district court found Wooldridge guilty of possession of methamphetamine and possession of drug paraphernalia. Wooldridge was sentenced to an 18-month term of probation with an underlying 15-month prison sentence.

ANALYSIS

*Motion to suppress*

Review of a district court's decision denying a motion to suppress requires a bifurcated standard of review. Without reweighing the evidence, the appellate court first examines the district court's findings to determine whether they are supported by substantial competent evidence. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). The district court's legal conclusions are then reviewed de novo. If there are no disputed material facts, the issue is a question of law over which the appellate court has unlimited review. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). In Wooldridge's case, the facts material to the legal issues on review are not in dispute. As framed by Wooldridge, the legal issue on appeal is whether the district court erred in applying the good-faith exception to the exclusionary rule under the facts presented.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights both provide protection against unreasonable searches

5

and seizures. *State v. Brittingham*, 296 Kan. 597, 601, 294 P.3d 263 (2013). Warrantless searches are deemed unreasonable and invalid unless they fall within a recognized exception to the warrant requirement. The State bears the burden of establishing that a warrantless search was lawful. *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which precludes the State from utilizing such evidence against a defendant in subsequent judicial proceedings. The exclusionary rule was created by the United States Supreme Court to deter police misconduct. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Kansas similarly recognizes the exclusionary rule in criminal proceedings as an appropriate remedy for an unlawful search. See *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011).

Acknowledging that the "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations," the United States Supreme Court has held that evidence will not be excluded where the officer who obtained the evidence through an unlawful search or seizure acted in good faith. *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2426, 180 L. Ed. 2d 285 (2011). This is commonly referred to as the "good-faith exception" to the exclusionary rule. To determine whether the good-faith exception applies, courts must balance the deterrent effect of excluding the evidence against "the 'substantial social costs' generated by the rule." 131 S. Ct. at 2427. In *Davis*, the Supreme Court has explained that "[t]he basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." 131 S. Ct. at 2427. Consequently, "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." 131 S. Ct. at 2427. Conversely, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, [citation omitted], or when their conduct involves only

simple, 'isolated' negligence, [citation omitted], the "'deterrence rationale loses much of its force,'" and exclusion cannot 'pay its way.'" 131 S. Ct. at 2427-28.

Relevant to the issue presented in this case, the United States Supreme Court has applied the good-faith exception to the exclusionary rule under facts almost identical to the ones presented here. In *Arizona v. Evans*, 514 U.S. 1, 15-16, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), the police arrested Evans after stopping him for a traffic infraction because the police department's computer database indicated that there was an outstanding warrant for his arrest. After the arrest, police discovered marijuana in Evans' car. It was later determined that the arrest warrant had been quashed prior to the arrest, but the police department was not notified. The Supreme Court applied the *Leon* good-faith exception and held as a matter of law that the evidence discovered after Evans' arrest should not be excluded. 514 U.S. at 15-16. In support of this holding, the Court determined that "exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." 514 U.S. at 14. Specifically, the Court found that the exclusionary rule is meant to deter police misconduct, not mistakes by court employees. 514 U.S. at 14. The Court also found that Evans failed to offer evidence that the court employees were inclined to ignore or subvert the Fourth Amendment or that they acted so lawlessly that the exclusionary rule sanction would have been appropriate. 514 U.S. at 14-15. Finally, the Court found no basis to believe that excluding the challenged evidence at trial would have had a significant effect on the court employees tasked with informing the police when a warrant has been quashed. 514 U.S. at 15.

Although we do not, as the State requests, consider the Court in *Evans* to have established a categorical exception to the exclusionary rule for clerical errors by third parties, the particular facts presented in *Evans* are so similar to the facts presented here that we are bound to follow its holding. Like the facts in *Evans*, there is no evidence in this case that the database error was wanton, deliberate, or systemic. Instead, the testimony provided by Moore supports a reasonable inference that the database error was

7

nothing more than an isolated clerical mistake or isolated excusable negligence. Nevertheless, Wooldridge attempts to differentiate the facts of his case from those presented in *Evans*. Specifically, Wooldridge contends that the error in *Evans* was made by a court clerk working in the independent judicial branch of government and the error in his case was made by a law enforcement employee. But subsequent caselaw applying *Evans* makes it clear that when considering whether to apply the good-faith exception to the exclusionary rule, the issue is whether exclusion of evidence at trial would sufficiently deter future errors so as to warrant such a severe sanction and not whether the employee who made the error works for law enforcement. See *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496, *reh. denied* 556 U.S. 1161 (2009).

In *Herring*, officers arrested Herring pursuant to an arrest warrant that appeared in the Dale County, Alabama, warrant database. See 555 U.S. at 137. In the search incident to that arrest, officers found drugs and a gun on Herring's person. Herring was then indicted on federal gun and drug possession charges. It turned out, however, that the warrant under which the officers arrested Herring had been recalled, but the database had not been updated to reflect that recall. Herring filed a motion to suppress the drugs and the gun, which the district court denied. Relying primarily on the good-faith exception to the exclusionary rule, the United States Supreme Court held that, although the failure of the police to update the warrant database to reflect the fact that Herring's warrant was withdrawn was negligent, it was not reckless or deliberate conduct. In so holding, the Court reiterated that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 555 U.S. at 144. As long as the "police have [not] been shown to be reckless in maintaining [the] warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests," exclusion of evidence is not warranted when the arrest was made on objectively reasonable reliance on a warrant that had been subsequently recalled. 555 U.S. at 146.

8

The record reflects Moore was told by dispatch that Wooldridge was subject to an active warrant. Both Moore and the dispatcher were relying on a computer database that had proved to be accurate in each of Moore's approximately 40 previous arrests that were based on communications from dispatch. We find it was objectively reasonable for Moore to rely on the database. We further find no evidence that the police or any other entity had been reckless in maintaining the warrant system. Thus, there is nothing in the record to establish that exclusion of the evidence here would have any significant deterrent effect on the party or parties responsible for maintaining the database. In short, the evidence presented at the hearing before the district court establish that Moore reasonably relied on the dispatcher and the computer database when he arrested Wooldridge. For this reason, the *Leon* good-faith exception applies and we find no error in the district court's decision to deny Wooldridge's motion to suppress.

*Illegal sentence*

Wooldridge argues for the first time on appeal that he received an illegal sentence. Generally, issues not raised to the district court may not be raised on appeal. *State v. Brown*, 300 Kan. 565, 590, 331 P.3d 797 (2014). But K.S.A. 22-3504(1) states that "[t]he court may correct an illegal sentence at any time." Appellate courts may even correct illegal sentences *sua sponte*. *State v. Kelly*, 298 Kan. 965, 975-76, 318 P.3d 987 (2014).

> "An 'illegal sentence' is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citation omitted.]" *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

Wooldridge claims his 18-month probation term was an illegal sentence because the relevant statutory provision only authorized a maximum probation term of 12 months. Thus, his argument falls into the second category of illegal sentences.

There are two sentencing statutes that could arguably apply to Wooldridge's convictions in this case: K.S.A. 2015 Supp. 21-6824 and K.S.A. 2015 Supp. 21-6608. K.S.A. 2015 Supp. 21-6824(a) establishes a nonprison sanction of certified drug abuse treatment programs for certain offenders sentenced on or after November 1, 2003. It also allows the district court to impose a probation term of up to 18 months. K.S.A. 2015 Supp. 21-6824(c). There are several requirements a defendant must meet to qualify for treatment under this statute. For instance, an offender must be assigned both a high risk status by a drug abuse assessment and either a moderate or high risk status by a criminal risk-need assessment. K.S.A. 2015 Supp. 21-6824(c).

In this case, Wooldridge completed both a drug abuse assessment and a criminal risk-need assessment. At sentencing, the district court noted that the criminal risk-need assessment reflected Wooldridge was at moderate risk for reoffending. Although the drug abuse assessment recommended drug treatment for Wooldridge, the district court noted that the drug abuse assessment did not assess Wooldridge as a high risk for relapse. After finding Wooldridge had completed court-ordered treatment under K.S.A. 2015 Supp. 21-6824 in another case while this case was pending, the district court held Wooldridge was not eligible for treatment under K.S.A. 2015 Supp. 21-6824 in this case. Wooldridge does not take issue with this finding on appeal. The language of K.S.A. 2015 Supp. 21-6824, however, is mandatory so Wooldridge should have been sentenced under that statute if he met all of its requirements.

To that end, we find the district court properly determined Wooldridge was not eligible for treatment under K.S.A. 2015 Supp. 21-6824 in this case. As the district court noted, the drug abuse assessment did not assign Wooldridge a high risk status. Without a finding of high risk status, Wooldridge did not qualify for sentencing under K.S.A. 2015 Supp. 21-6824.

10

It is therefore necessary to consider Wooldridge's sentence in light of K.S.A. 2015 Supp. 21-6608. Under K.S.A. 2015 Supp. 21-6608(c)(3), a sentencing court may impose a maximum probation term of 12 months if a defendant is convicted of a drug severity level 5 felony after July 1, 2012. The district court may only impose a longer period of probation if it "finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by" the usual 12-month term of probation. K.S.A. 2015 Supp. 21-6608(c)(5).

Wooldridge's primary offense, possession of methamphetamine, was a drug severity level 5 felony and it was committed in February 2013. So, in order to sentence him to a probation term beyond 12 months, the district court was required to find with particularity that the safety of the public would be jeopardized or Wooldridge's welfare would not be served if he was sentenced to only 12 months of probation. K.S.A. 2015 Supp. 21-6608(c)(5). It failed to make either of these required findings.

When announcing the length of Wooldridge's sentence, the sentencing court stated:

> "Probation in this case is intended by the Court to be up to 18 months. Court deeming that to be the appropriate length of probation. Court notes that Mr. Wooldridge has had a successful period of what we would call sobriety, however, drug addiction can last a lifetime. The Court is of the belief that long term supervision is in the offender's best interest and most consistent with the interest of justice and balancing the needs of the offender with the requirements that an offender such as him would have to meet."
> "Eighteen months gives him an adequate opportunity to meet all of his requirements."

The district court did not make any findings relating to the public's safety. It also failed to find and set forth with particularity any reasons it believed Wooldridge's welfare

11

would not be served by 12 months of probation. "When something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details." *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992). Implicit findings are insufficient when particularized findings are required by statute. *State v. Miller*, 32 Kan. App. 2d 1099, 1102-03, 95 P.3d 127 (2004).

The district court found that "long term supervision is in the offender's best interests." But this was merely a general finding that alone was inadequate to extend Wooldridge's probation. First, the district court was required to find that the usual term of probation—12 months—would not serve Wooldridge's welfare, *not* that a longer term would be in his best interests. In other words, the district court had to find that 12 months were *inadequate* to serve Wooldridge's welfare, not that 18 months were best.

The district court also stated that drug addiction can last a lifetime. Even assuming that this statement was meant to support the extension of Wooldridge's probation, it fails the test for particularity. Wooldridge may have to contend with his drug addiction long after *any* sentence imposed in this case is served, regardless of its length. Further, Wooldridge had apparently already successfully achieved sobriety at the time of his sentencing. Given these facts, the district court failed to explain in detail how Wooldridge's welfare would not be served by 12 months of probation.

Finally, the district court stated that 18 months would give Wooldridge an adequate opportunity to meet all of his requirements. This finding has nothing to do with public safety or Wooldridge's welfare. But even if it did, the district court failed to explain what requirements of probation necessitated an extended probation term or why it felt those requirements could not be completed in the usual 12-month period. In summary, the district court failed to make the proper findings with particularity necessary to extend Wooldridge's probation. Therefore, we conclude Wooldridge was subject to a

maximum probation term of 12 months and the district court erred by imposing a longer term.

Notwithstanding our conclusion in this regard, the State argues Wooldridge waived his right to challenge the 18-month term of probation by consenting to it. In support of this argument, the State notes that the record contains a journal entry modifying the terms of Wooldridge's probation. In it, the district court found that Wooldridge must abide by the following additional condition of probation: "Supervision with Community Corrections for a period of up to 18 months from his sentencing date of 08/06/2014." Wooldridge had previously been under the supervision of Butler County Court Services.

K.S.A. 2015 Supp. 21-6608(c)(8) authorizes a district court to modify or extend an offender's probation term, but the offender is entitled to a modification hearing and a judicial finding of necessity. "Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term." K.S.A. 2015 Supp. 21-6608(c)(8). Here, Wooldridge signed the journal entry of modification, which contained the following written waiver:

> "I, Jeffery E. Wooldridge, understand that I am entitled to a hearing before the judge on the issue of extending/modifying my probation and that I have the right to be represented by counsel and waive the requirement of a judicial finding of necessity. Understanding these rights I waive my right to counsel and to a hearing and consent to the extension/modification of my probation as outlined above."

The State argues that this waiver and consent to modification prevents Wooldridge from now challenging his original sentence. We are not persuaded by this argument. The modification was intended to change the entity to whom Wooldridge would report and did not modify or change in any way the term of the probation. On these facts, the State

13

has failed to establish Wooldridge's knowingly, voluntarily, and intelligently waived his right to challenge and thus consented to the court imposing a term of probation that exceeded the statutory maximum of 12 months. See *e.g.*, *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010) ("If there is a knowing, voluntary, and intelligent waiver, the district court may order payment of [Board of Indigents' Defense Services] attorney fees without making" the statutorily required findings concerning the financial resources of the defendant and the burden that payment of such sum would impose.).

*Criminal history score*

Wooldridge argues that his criminal history was not proved to a jury beyond a reasonable doubt, and therefore his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), were violated. He concedes in his brief that the Kansas Supreme Court previously rejected this claim in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). But he argues that *Ivory* was wrongly decided and states that he includes this issue to preserve it for possible federal review. Under *Ivory*, this claim fails.

Affirmed in part, reversed in part, and remanded with directions to impose a term of probation not to exceed the statutory maximum of 12 months.