NOT DESIGNATED FOR PUBLICATION

No. 115,238

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEO V. CHERRY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed April 21, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, and *Daniel D. Gilligan*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and BRUNS, JJ.

*Per Curiam*: Nurses discovered crack cocaine in Leo V. Cherry's clothing while they were treating him in the emergency department of Hutchinson Regional Medical Center (HRMC). They promptly reported their discovery to law enforcement. The State later charged Cherry with possession of cocaine, a severity level 5 drug felony. Cherry filed a motion to suppress all evidence, arguing the nurses were state actors and they had conducted an illegal search. The district court denied the motion. A jury convicted Cherry, and the district court sentenced him to mandatory drug treatment. Cherry appeals, arguing the district court erred in denying his motion to suppress. We affirm.

1

On June 20, 2104, Cherry arrived at the emergency department at HRMC by ambulance. Cynthia Devena, a nurse, helped Cherry change into a gown. While Devena did not feel for any items in Cherry's clothing, she did notice cash in several articles of his clothing. HRMC protocol requires staff to inventory a patients' valuable items upon admission. Devena notified a hospital security officer, and together they inventoried the cash and placed it in an envelope. The envelope came with a detachable receipt that patients can later use to retrieve their items. After inventorying the cash and placing it in the envelope, the security officer took the envelope to the hospital's safe and someone placed the receipt on a table in Cherry's room. Someone then placed Cherry's clothing on a chair in his room.

After a few hours, a physician decided to transfer Cherry to the Intensive Care Unit (ICU) for further care. Stephanie Degroot, a nurse's aide, began preparing to move Cherry to the ICU by gathering up all his belongings. She saw the receipt for his inventoried cash lying on the table. She told Cherry she was going to place the receipt in the pocket of his pants, and Cherry said, "Okay." While inserting the receipt into the pants pocket, Degroot noticed a jewelry box. She told Cherry she had found the box and asked if there were any more valuables they needed to lock up. According to Degroot, Cherry said not to worry about it and just leave it alone.

Devena was in the hallway outside Cherry's room, and Degroot called for her to come in. Degroot told Devena there was a jewelry box in Cherry's pants pocket and she did not know if it was something that should be added to Cherry's valuables list. Degroot gave the box to Devena. Cherry became very upset and told them to stay out of it and it was none of their business. Devena believed there was jewelry inside the box that she would need to inventory, so she opened the box. Inside, she found what she believed to be cocaine. Devena told the charge nurse, and the charge nurse told her to notify law enforcement. Devena placed the box in her pocket and called law enforcement.

2

Before law enforcement arrived, Markus Dawes, a security officer for HRMC, reported to Cherry's room in the emergency department. A nurse handed him a bag with the jewelry box inside. Dawes took several photographs of the box per hospital security protocol and filed a report about the incident. Dawes did not provide the photographs to law enforcement or the district attorney's office, but he could not say if anyone else from the hospital had done so.

Officer Adam Weishaar of the Hutchinson Police Department arrived at HRMC and spoke with Devena, who gave the jewelry box to Weishaar. He opened the box and saw a white substance he believed to be crack cocaine. Weishaar spoke with Degroot and Dawes.

By the time Weishaar arrived at HMRC, Cherry was in the ICU. Weishaar went to Cherry's room in the ICU, but decided not to question him at that time because he did not appear to be "in the right state of mind." He did not search Cherry's clothing. Weishaar took the jewelry box and the suspected crack cocaine to the station and placed them into evidence. KBI testing later verified that the substance inside the box contained cocaine.

The State charged Cherry with possession of cocaine, a severity level 5 drug felony. Before trial, Cherry filed a motion to suppress all physical evidence. He argued the jewelry box was obtained as the result of an unconstitutional search and seizure. Specifically, he argued, "the actions of the hospital nurses taking [his] clothing and belongings against his will, and without his consent, and searching his items essentially resulted in a government agent search."

At the hearing on the motion to suppress, Devena testified she had no contact with law enforcement before finding the jewelry box. When asked whether her role as a nurse required her to work closely with law enforcement, Devena responded that law enforcement occasionally came in the hospital and questioned people after car accidents

3

or they brought in people with injuries or people who need medical clearances. When asked if local law enforcement had a policy that the HRMC must notify it when illegal drugs were found on the premises, Devena said she did not know if law enforcement had such a policy, but HRMC had a policy against storing illegal substances. She also stated HRMC was a private, not a state, entity.

Weishaar testified that HRMC has its own security staff and the Hutchinson Police Department does not provide any security for the hospital outside of normal patrol. He said he did not perform a search of Cherry's items and only opened Cherry's wallet in order to get his identification card. In his personal opinion, the HRMC staff and law enforcement were not involved in a joint venture in order to confiscate illegal drugs. As far as he was concerned, the only reason HRMC staff went through a patient's belongings was to inventory valuables, so the hospital would not be liable if they were later lost.

Defense counsel argued:

"Simply there's a practice that the nursing employees at the hospital look through the clothing. If they discover illegal contraband, it is the common practice to call law enforcement. Mr. Cherry would submit that due to that practice that would imply that the hospital staff is acting as an agent of law enforcement and the purpose of that is to try to confiscate contraband, illegal items, controlled substance to get them off the street; in essence to assist law enforcement in their efforts and, therefore, are acting as agents of law enforcement."

The district court denied Cherry's motion to suppress. The court found HRMC staff searched Cherry's belongings per medical center policy and not at the request of or as an agent of law enforcement. Moreover, law enforcement did not exceed the scope of the prior search.

The jury convicted Cherry. The district court sentenced him to 18 months' probation in mandatory drug treatment, with an underlying prison sentence of 15 months. Cherry appeals.

On appeal, Cherry argues the district court erred in denying his motion to suppress because Devena and Degroot were state actors. His main argument is Devena and Degroot worked for a hospital that served the public health, thus, they were government employees. And because they were government employees performing the duties of their job when they discovered the cocaine, their actions were subject to the Fourth Amendment to the United States Constitution. The State argues Devena and Degroot were private actors and the Fourth Amendment is inapplicable to their search.

Review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not usually reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016) (reviewing scope of search warrant); *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014) (determining if emergency aid exception applied to search of apartment); *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014) (motion to suppress inculpatory statements). When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The Fourth Amendment protects against unreasonable searches and seizures, and warrantless searches are per se unreasonable. The Kansas Constitution Bill of Rights, §15 provides similar protections. The prohibitions of the Fourth Amendment are only

5

applicable to state actors. They do not apply to "'a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); see also *State v. Brittingham*, 296 Kan. 597, Syl. ¶ 2, 294 P.3d 263 (2013) (holding the Fourth Amendment and § 15 do not apply to searches and seizures conducted by private persons). Thus, in order for Cherry to succeed on his claim, Devena and Degroot must be found to have been state actors.

As the State notes in its brief, the district court found Devena and Degroot were not agents of law enforcement, and substantial competent evidence supports this finding. Devena testified HRMC was a private hospital and she did not have any contact with law enforcement prior to discovering the cocaine. She also testified the hospital had a policy of inventorying patients' valuables and that was why she opened the jewelry box. There was no evidence to suggest HRMC coordinated with law enforcement to discover illegal substances.

Cherry argues that Devena and Degroot were state actors. Relying on *State v. Smith*, 243 Kan. 715, 763 P.2d 632 (1988), He contends private individuals are state actors for the purpose of the Fourth Amendment if they are government employees and they conducted the challenged search or seizure as part of the duties of their employment. In *Smith*, an employee of the State Department of Wildlife and Parks was collecting trash, one of the responsibilities of his job, when he heard a strange noise coming from a trailer. The employee entered the trailer attempting to locate the source of the noise and discovered drugs and drug paraphernalia. Our Supreme Court held that the Parks Department employee was not a state actor because he was acting outside the duties and objectives of his employment when he entered the trailer. 243 Kan. at 722.

6

Cherry asserts that Devena and Degroot were government employees, fulfilling the first prong of the test in *Smith*. However, unlike the employee in *Smith*, however, Devena and Degroot do not work for a government agency or even a state hospital. Devena testified at the hearing on the motion to suppress that HRMC was a private entity.

Cherry provides two alternate arguments for why Devena and Degroot were government employees. First, he asserts Devena and Degroot would be government employees "if the hospital receives government support." Cherry does not provide any authority to support this argument. Additionally, he does not cite to any information in the record establishing how much, if any, support HRMC received from the government. In fact, he does not even affirmatively state the hospital did receive government support.

Next, Cherry argues Devena and Degroot were government employees because they work for a "public emergency health center." According to Cherry, individuals often do not get to choose which emergency room ambulances take them to, thus, emergency rooms serve the public health. Because Devena and Degroot work at an institution that serves the public health, he reasons, they are government employees.

Again, Cherry does not provide any authority for this argument. See *Murray*, 302 Kan. at 486. His argument is reminiscent of the public function doctrine. Under this doctrine, courts may consider a private entity to be a state actor if it exercises a power traditionally and exclusively reserved to the government. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974). Even under this doctrine though, Cherry's argument would still fail. He has not argued, let alone demonstrated, that providing emergency health services is traditionally an exclusive state function. Moreover, the United States Supreme Court has already rejected the notion that all businesses "'affected with the public interest'" are state actors. *Jackson*, 419 U.S. at 353.

Finally, Cherry argues HRMC cooperates with law enforcement rendering Devena and Degroot state actors. To support this argument, Cherry notes HRMC regularly calls police when drugs are found. Simply calling police to report a crime does not make one a state actor. See *Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) ("[T]here is nothing constitutionally suspect in the existence, without more . . . of . . . active cooperation with the police . . .[and] it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding . . . in the apprehension of criminals.").

In order to determine if a private individual is a state actor by cooperating with law enforcement, courts have applied a two prong test: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his or her own ends." *Brittingham*, 296 Kan. 597, Syl. ¶ 3; see *United States v. Benoit*, 713 F.3d 1, 9 (10th Cir. 2013). Based on the record in this case, neither prong is fulfilled. Devena and Degroot both testified they discovered the jewelry box and the crack cocaine as part of hospital procedure to inventory a patient's valuables. Devena stated she did not have any contact with law enforcement prior to discovering the crack cocaine and she only interacted with law enforcement through her job on occasion. Nothing in the record indicates the Hutchinson Police Department knew of and acquiesced to Devena's and Degroot's actions or that the nurses intended to aid law enforcement by searching for illegal substances.

Cherry's argument that Devena and Degroot were state actors is without merit. Because the nurses were not state actors, the provisions of the Fourth Amendment are not applicable to their actions. Accordingly, we affirm.

Affirmed.